# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |  |
|---|---|---|
| ———————————————— x | | |
| PREVENT U.S.A. CORPORATION, | : | |
| | : | |
| Plaintiff, | : | No. 2:22-cv-00506-JRG-RSP |
| | : | |
| v. | : | Honorable Rodney Gilstrap |
| | : | Chief District Court Judge |
| VOLKSWAGEN AG; VOLKSWAGEN GROUP OF | : | |
| AMERICA, INCORPORATED, | : | Honorable Roy S. Payne |
| | : | Magistrate Judge |
| Defendants. | : | |
| | : | |
| ———————————————— x | | |

## **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

| | |
|---|---|
| Michael Smith | Sharon L. Nelles (admitted *pro hac vice*) |
| State Bar No. 18650410 | Steven L. Holley (admitted *pro hac vice*) |
| SCHEEF & STONE, LLP | Suhana S. Han (admitted *pro hac vice*) |
| 113 East Austin Street | Leonid Traps (admitted *pro hac vice*) |
| Marshall, Texas 75670 | Jessica H. Goldman (admitted *pro hac vice*) |
| Tel: (903) 938-8900 | SULLIVAN & CROMWELL LLP |
| michael.smith@solidcounsel.com | 125 Broad Street |
| | New York, New York 10004 |
| | Tel: (212) 558-4000 |
| | nelless@sullcrom.com |
| | holleys@sullcrom.com |
| | hans@sullcrom.com |
| | trapsl@sullcrom.com |
| | goldmanj@sullcrom.com |

*Counsel for Defendants*

February 10, 2023

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF ISSUES PRESENTED....................................................................4

COMPLAINT ALLEGATIONS AND PRIOR GERMAN AND U.S. PROCEEDINGS .............5

    A.     Prevent Group and Prevent USA ...........................................................5

    B.     Volkswagen AG and Volkswagen Group of America...............................6

    C.     Prevent Group's Ongoing Litigation in German Courts...........................6

    D.     Prevent Group's Unsuccessful Attempts to Sue in the United States.....................8

ARGUMENT ...........................................................................................................10

I.      GERMANY IS THE PROPER FORUM FOR THIS DISPUTE.....................................10

    A.     Prevent Group Is Precluded from Relitigating the Proper Forum. ........................10

    B.     Differences in Circuit Precedent Are Irrelevant to the Preclusion Analysis. ........13

    C.     Regardless of Preclusion, Prevent Group's Claims Belong in Germany...............14

II.     PREVENT GROUP'S CLAIMS ARE BARRED BY THE FTAIA. ...............................17

III.    PREVENT GROUP FAILS TO STATE AN ANTITRUST OR ANY OTHER CLAIM........................................................................................................18

    A.     Prevent Group Fails to Plead Multiple Elements of its Antitrust Claims. ............18

            1.     Prevent Group Does Not Plead Antitrust Standing....................................19

            2.     Prevent Group Does Not Plead Market Power in a Properly Defined Market. ...................................................................22

            3.     Prevent Group Does Not Plead an Unreasonable Restraint of Trade. .......................................................................25

    B.     Prevent Group's State Law Claims Must Be Dismissed. .....................................27

    C.     Prevent Group Makes No Relevant Allegations Regarding VWGoA..................28

# TABLE OF CONTENTS
## (cont.)

*Page*

IV.     PREVENT GROUP FAILS TO PLEAD PERSONAL JURISDICTION OVER
        VWAG. ...................................................................................................................29

CONCLUSION........................................................................................................................30

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Abraham & Veneklasen* v. *Am. Quarter Horse Ass'n*,
   776 F.3d 321 (5th Cir. 2015) ...................................................................27

*Addamax Corp.* v. *Open Software Found., Inc.*,
   152 F.3d 48 (1st Cir. 1998).....................................................................22

*Addamax Corp.* v. *Open Software Found., Inc.*,
   888 F. Supp. 274 (D. Mass. 1995) ..........................................................21

*In re Air Crash Disaster Near New Orleans*,
   821 F.2d 1147 (5th Cir. 1987) (*en banc*) ...............................................15

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   19 F.4th 127 (2d Cir. 2021) ....................................................................22

*Asahi Metal Indus. Co.* v. *Superior Ct.*,
   480 U.S. 102 (1987)................................................................................29

*Atl. Richfield Co.* v. *USA Petroleum Co.*,
   495 U.S. 328 (1990)................................................................................18

*B & B Hardware, Inc.* v. *Hargis Indus.*,
   575 U.S. 138 (2015)................................................................................14

*Bayou Bottling, Inc.* v. *Dr. Pepper Co.*,
   725 F.2d 300 (5th Cir. 1984) ..................................................................20

*BRFHH Shreveport, LLC* v. *Willis-Knighton Med. Ctr.*,
   49 F.4th 520 (5th Cir. 2022) ...................................................................25

*Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)................................................................................20

*Cable Line, Inc.* v. *Comcast Cable Commc'ns*,
   767 F. App'x 348 (3d Cir. 2019) .............................................................26

*Can* v. *Goodrich Pump & Engine Control Sys.*,
   711 F. Supp. 2d 241 (D. Conn. 2010)......................................................14

*Cargill, Inc.* v. *Monfort of Colo., Inc.*,
   479 U.S. 104 (1986)................................................................................20

## TABLE OF AUTHORITIES
### (cont.)

*Page(s)*

*Cotemar S.A. De C.V.* v. *Beaufort*,
190 F. Supp. 3d 577 (E.D. La. 2016) ..................................................................12

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014) ..........................................................................................29

*Den Norske Stats Oljeselskap As* v. *HeereMac Vof*,
241 F.3d 420 (5th Cir. 2001) ............................................................................18

*Doctor's Hosp. of Jefferson, Inc.* v. *Southeast Med. All.*,
123 F.3d 301 (5th Cir. 1997) ............................................................................19

*Domed Stadium Hotel, Inc.* v. *Holiday Inns. Inc.*,
732 F.2d 480 (5th Cir. 1984) ............................................................................23

*Douglass* v. *Nippon Yusen Kabushiki Kaisha*,
46 F.4th 226 (5th Cir. 2022) (*en banc*) ............................................................29

*DTEX, LLC* v. *BBVA Bancomer, S.A.*,
508 F.3d 785 (5th Cir. 2007) ......................................................................16, 17

*Dunn & Mavis, Inc.* v. *Nu-Car Driveaway, Inc.*,
691 F.2d 241 (6th Cir. 1982) ............................................................................26

*Eastman Kodak* v. *Image Tech. Servs.*,
504 U.S. 451 (1992) ..........................................................................................23

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) ................................................................................30

*Exxon Corp.* v. *Chick Kam Choo*,
817 F.2d 307 (5th Cir. 1987) ............................................................................11

*F. Hoffman-La Roche Ltd.* v. *Empagran S.A.*,
542 U.S. 155 (2004) ..........................................................................................18

*GESPA Nicar., S.A.* v. *Inabata Eur., GmbH*,
2019 WL 7340304 (W.D. Tex. Dec. 30, 2019) ................................................11

*Ginzburg* v. *Mem'l Healthcare Sys.*,
993 F. Supp. 998 (S.D. Tex. 1997) ..............................................................19, 24

*Hunn* v. *Dan Wilson Homes, Inc.*,
2013 WL 12128677 (N.D. Tex. Sep. 23, 2013) ................................................28

# TABLE OF AUTHORITIES
## (cont.)

*Page(s)*

*Indus. Inv. Dev. Corp.* v. *Mitsui & Co.*,
  671 F.2d 876 (5th Cir. 1982) ....................................................................................13, 14, 15

*Inmar Rx Sols., Inc.* v. *Devos, Ltd.*,
  786 F. App'x 445 (5th Cir. 2019) ...........................................................................................29

*Int'l Transactions, Ltd.* v. *Embotelladora Agral Regiomontana, SA de CV*,
  347 F.3d 589 (5th Cir. 2003) ..................................................................................................24

*ITL Int'l, Inc.* v. *Constenla*,
  669 F.3d 493 (5th Cir. 2012) ..................................................................................................30

*Jebaco, Inc.* v. *Harrah's Operating Co.*,
  587 F.3d 314 (5th Cir. 2009) ...........................................................................................19, 21

*JSW Steel (USA) Inc.* v. *Nucor Corp.*,
  586 F. Supp. 3d 585 (S.D. Tex. 2022) ....................................................................................27

*Kempe* v. *Ocean Drilling & Expl. Co.*,
  683 F. Supp. 1064 (E.D. La. 1988) .........................................................................................15

*Kempe* v. *Ocean Drilling & Expl. Co.*,
  876 F.2d 1138 (5th Cir. 1989) ..........................................................................................14, 15

*L.G. Motorsports, Inc.* v. *NGMCO, Inc.*,
  2012 WL 718603 (E.D. Tex. Mar. 6, 2012) ...........................................................................23

*Mai Larsen Designs* v. *Want2Scrap, LLC*,
  2019 WL 2343019 (W.D. Tex. June 3, 2019) .........................................................................19

*Maris Distrib. Co.* v. *Anheuser-Busch, Inc.*,
  302 F.3d 1207 (11th Cir. 2002) ..............................................................................................24

*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................................21, 27

*Meyers* v. *Textron, Inc.*,
  540 F. App'x 408 (5th Cir. 2013) .............................................................................................5

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)................................................................................................................15

## TABLE OF AUTHORITIES
### (cont.)

*Page(s)*

*Mitsui & Co. v. Indus. Inv. Dev. Corp.*,
    460 U.S. 1007 (1983)................................................................................................14

*Monkton Ins. Servs.* v. *Ritter*,
    768 F.3d 429 (5th Cir. 2014) ..................................................................................29

*Muenster Butane, Inc.* v. *Stewart Co.*,
    651 F.2d 292 (5th Cir. 1981) ..................................................................................21

*Nat'l Post Office Mail Handlers* v. *Am. Postal Workers Union*,
    907 F.2d 190 (D.C. Cir. 1990)................................................................................13

*New Orleans Ass'n of Cemetery Tour Guides & Cos.* v. *New Orleans*
    *Archdiocesan Cemeteries*,
    56 F.4th 1026 (5th Cir. 2023) ................................................................................23

*Ney* v. *3i Grp. PLC*,
    2021 WL 8082411 (W.D. Tex. Apr. 13, 2021)........................................................5

*Norris* v. *Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ...........................................................................21, 22

*NYNEX Corp.* v. *Discon, Inc.*,
    525 U.S. 128 (1998)................................................................................................25

*O'Keefe* v. *Noble Drilling Corp.*,
    347 F. App'x 27 (5th Cir. 2009) .............................................................................15

*Ohio* v. *Am. Express Co.*,
    138 S. Ct. 2274 (2018)............................................................................................18

*Parker Drilling Mgmt. Servs.* v. *Rockwell*,
    2020 WL 8455473 (S.D. Tex. June 4, 2020)....................................................3, 11

*Prevent DEV GmbH* v. *Adient PLC*,
    2021 WL 5585917 (E.D. Mich. Nov. 30, 2021) ............................................ *passim*

*Prevent USA Corp.* v. *Volkswagen AG*,
    17 F.4th 653 (6th Cir. 2021) ......................................................................... *passim*

*Prevent USA Corp.* v. *Volkswagen AG*,
    2021 WL 1087661 (E.D. Mich. Mar. 22, 2021) ........................................... *passim*

## TABLE OF AUTHORITIES
### (cont.)

*Page(s)*

*PSKS, Inc.* v. *Leegin Creative Leather Prods.*,
    615 F.3d 412 (5th Cir. 2010) ........................................................................................19, 23

*Queen City Pizza, Inc.* v. *Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)....................................................................................................24

*Rajasekaran* v. *Crandall*,
    460 F. Supp. 3d 1269 (M.D. Fla. 2020) ................................................................................14

*Ranza* v. *Nike*,
    793 F.3d 1059 (9th Cir. 2015) ................................................................................................17

*Rustal Trading US* v. *Makki*,
    17 F. App'x 331 (6th Cir. 2001) ......................................................................................16, 17

*Seguros Comercial Ams. S.A.* v. *Am. President Lines, Ltd.*,
    933 F. Supp. 1301 (S.D. Tex. 1996) .......................................................................................13

*Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)................................................................................................................16

*Stewart Glass & Mirror, Inc.* v. *U.S. Auto Glass Discount Ctrs., Inc.*,
    200 F.3d 307 (5th Cir. 2000) ..................................................................................................27

*Test Masters Educ. Servs.* v. *Singh*,
    428 F.3d 559 (5th Cir. 2005) ............................................................................................11, 13

*Tilton* v. *Marshall*,
    925 S.W.2d 672 (Tex. 1996)...................................................................................................28

*United Biologics, LLC* v. *Allergy & Asthma Network/Mothers of Asthmatics, Inc.*,
    819 F. App'x 204 (5th Cir. 2020) ...........................................................................................28

*United Farmers Agents Ass'n* v. *Farmers Ins. Exch.*,
    89 F.3d 233 (5th Cir. 1996) ....................................................................................................24

*United States* v. *Colgate & Co.*,
    250 U.S. 300 (1919)................................................................................................................25

*Univ. Comput. Sys.* v. *Volvo Cars of N. Am.*,
    1997 WL 1433879 (S.D. Tex. Sep. 29, 1997) ..................................................................23, 24

*Vasquez* v. *Bridgestone/Firestone, Inc.*,
    325 F.3d 665 (5th Cir. 2003) ..................................................................................................14

# TABLE OF AUTHORITIES
## (cont.)

*Page(s)*

*Villar* v. *Crowley Mar. Corp.*,
    990 F.2d 1489 (5th Cir. 1993) ..........................................................................11, 12

*Vines* v. *Univ. of La.*,
    398 F.3d 700 (5th Cir. 2005) .................................................................................12

*Weiss* v. *York Hosp.*,
    745 F.2d 786 (3d Cir. 1984).................................................................................26

*White Mule Co.* v. *ATC Leasing Co. LLC*,
    540 F. Supp. 2d 869 (N.D. Ohio 2008)...........................................................20, 26

*Whitehurst* v. *Showtime Networks, Inc.*,
    2009 WL 3052663 (E.D. Tex. Sep. 22, 2009)  ........................................22, 23, 25

*Wiltfong* v. *Cal. State Bd. of Acct.*,
    2018 WL 935398 (W.D. Tex. Feb. 16, 2018)........................................................28

*Yamaha Corp. of Am.* v. *United States*,
    745 F. Supp. 734 (D.D.C. 1990) ..........................................................................13

## STATUTES AND RULES

15 U.S.C. § 6a ............................................................................................................17

Fed. R. Civ. P. 12(b) ...........................................................................................18, 29

## OTHER AUTHORITIES

Philip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW (2022).........................21, 26

## PRELIMINARY STATEMENT

Prevent Group, a network of companies, has already litigated and lost two cases essentially identical to this one.  Both cases were dismissed by courts in the Eastern District of Michigan on the ground that the claims asserted do not belong in the United States and should be pursued in Germany, where for seven years Prevent Group companies have been unsuccessfully pursuing more than a dozen related cases against Volkswagen AG.  The first dismissal was upheld by the Sixth Circuit and the second was never appealed.  Those courts held that:

- Plaintiff in this case, Prevent Group's U.S. subsidiary Prevent U.S.A. Corporation ("Prevent USA"), "appears to be nothing more than a scouting party for the Prevent Group, a cluster of European companies with no operations in" and no "genuine connection to the United States." *Prevent USA Corp.* v. *Volkswagen AG*, 2021 WL 1087661, at *11 (E.D. Mich. Mar. 22, 2021) ("*Prevent I*").  "Prevent USA" "has several hallmarks of a 'shell company'—a place of business in an apartment, few employees, and little apparent presence or activity in this country—whose forum choice merits little deference." *Prevent USA Corp.* v. *Volkswagen AG*, 17 F.4th 653, 661 (6th Cir. 2021) ("*Prevent I Appeal*").

- Prevent Group's "decision to sue in the United States has *nothing to do with convenience and everything to do with forum shopping*." *Prevent I*, 2021 WL 1087661, at *11 (emphasis added).

- The claims in this case "should be tried in Germany" because they represent "the continuation of an ongoing dispute (that has been and is currently being litigated in German courts) between European companies over an allegedly unlawful business strategy devised by a German company in Germany." *Prevent I*, 2021 WL 1087661, at *7.  "[A]llegations that are nearly identical" to those here—regarding a purported "Project 1" plot to "block" Prevent Group

acquisitions, and a supposed Volkswagen "monopsony" in automotive component parts—are currently being litigated in Germany.  *Id.* at *9, 12-16.

- "Germany is an available and adequate forum for the litigation of plaintiffs' antitrust and other business tort claims against" both Defendants in this case, and "the obviously more convenient and appropriate forum."  *Id.* at *9, 11.  "Given that the bulk of the evidence in this case will be in German or Germany, it is 'much less reasonable' to assume Prevent chose this forum for convenience rather than tactical advantage."  *Prevent DEV GmbH* v. *Adient PLC*, 2021 WL 5585917, at *15 (E.D. Mich. Nov. 30, 2021) ("*Prevent II*").

Apparently unwilling to accept those decisions, Prevent Group, which the Amended Complaint ("AC") concedes is the true party in interest (*see, e.g.*, AC ¶ 35 ("**Prevent Group brings this action against Volkswagen**")), now turns again to "Prevent USA," and to Texas. Here, as in Michigan, Prevent Group asserts antitrust claims based on Volkswagen AG's purported attempts to block Prevent Group's acquisitions of other suppliers.  Most of the allegations in this action are lifted verbatim from Prevent Group's prior U.S. complaints, with three immaterial exceptions.  *First*, the new complaint asserts that "Volkswagen" somehow compelled TBP d.d., a "manufacturer in Slovenia," to repurchase Prevent Group's shares in TBP (AC ¶¶ 21-25)—but does not attempt to connect that assertion to Texas or any theory of liability.  *Second*, Prevent Group adds a vague allegation on "information and belief" that it was blocked from acquiring International Automotive Components Gmbh ("IAC"), which has a plant in Texas.  (*Id.* ¶ 28.)  The purported blocking is not supported by any factual allegations, and, in any event, Prevent Group acknowledges that IAC is *headquartered in Luxembourg*.  (*Id.* ¶ 148.)  *Third*, Prevent Group defines the market to include "Volkswagen automotive component parts" only, rather than automotive component parts generally.  (*Id.* ¶ 159.)  This change is irrelevant to the forum analysis,

and reliance on a single-company market makes this case substantively much weaker than the Michigan cases because courts reject such gerrymandered market definitions.  (*Infra* at 23-24 (citing cases).)  The Amended Complaint should be dismissed because the prior *Prevent* decisions are preclusive, and for multiple other independent reasons.

  ***Germany Is the Proper Forum.***  Three courts have now held that the same claims as in this case should be dismissed on the basis of *forum non conveniens* and litigated in Germany. "There is no question that federal district courts in the Fifth Circuit apply collateral estoppel to dismiss suits based on earlier *forum non conveniens* decisions made by other federal courts," *Parker Drilling Mgmt. Servs.* v. *Rockwell*, 2020 WL 8455473, at *1 n.2 (S.D. Tex. June 4, 2020), and the prior decisions are therefore preclusive here.  Any difference between Fifth Circuit and Sixth Circuit law on the application of *forum non conveniens* in antitrust cases does not entitle Prevent Group to a redo after its losses in Michigan.  And, preclusion notwithstanding, it is clear, as U.S. courts have recognized, that (i) German courts are an adequate alternative forum and are deciding the same issues; (ii) private and public factors, including that documents and witnesses are in Germany, point to Germany as the proper forum; and (iii) Prevent Group's choice of forum deserves no deference given its German ownership and its transparent forum shopping.

  ***The FTAIA Bars Prevent Group's Claims.***  Prevent Group's claims should be dismissed under the Foreign Trade Antitrust Improvements Act ("FTAIA") because those claims are based on "foreign conduct" and arise from "foreign effects," as recognized by the court in *Prevent II*. 2021 WL 5585917, at *15-17.  That holding is both preclusive and well-reasoned given that Prevent Group's claims are based on conduct in Europe that allegedly caused injury there.

  ***Prevent Group Fails to State a Claim.***  Prevent Group fails to state an antitrust claim because (i) the alleged injury results from *less* consolidation and *increased* competition; (ii) the

proffered market definition is impermissibly limited to products purchased by a single company; and (iii) there is no actionable restraint of trade, as opposed to a unilateral decision not to do business with a particular supplier.  The common law claims are derivative of, and fall together with, the antitrust claims.  And the claims against Volkswagen Group of America, Inc. ("VWGoA") are especially inadequate because the Amended Complaint's single paragraph that mentions VWGoA has no bearing on Prevent Group's theory of liability.

***Prevent Group Fails to Plead Personal Jurisdiction over Volkswagen AG.***  Finally, Prevent Group does not plead personal jurisdiction against Volkswagen AG ("VWAG"), a German company.  The factual allegations in the Complaint relate to conduct directed at foreign countries—not the United States.

## STATEMENT OF ISSUES PRESENTED

1.      Should the Court dismiss in favor of a German forum where multiple U.S. courts have held that this dispute belongs in Germany, and the *forum non conveniens* factors militate in favor of that conclusion?

2.      Should the Court dismiss Prevent Group's antitrust claims under the FTAIA because those claims arise from foreign conduct with foreign effects, as other courts recognized?

3.      Should the Court dismiss Prevent Group's antitrust claims because Prevent Group (i) asserts that it was injured by less consolidation and greater competition and thus lacks antitrust standing; (ii) relies on a single-company market definition; and (iii) fails to plead a restraint of trade as opposed to a legal refusal to deal with a specific counterparty?

4.      Should the Court dismiss Prevent Group's state common law claims because they are derivative of Prevent Group's inadequately pleaded antitrust claims?

5.      Should the Court dismiss Prevent Group's claims against VWGoA because the Amended Complaint's single paragraph regarding VWGoA has no bearing on Prevent Group's theory of liability?

6.      Should the Court dismiss Prevent Group's claims against VWAG for lack of personal jurisdiction where that Defendant is incorporated and has its headquarters and principal place of business in Germany, and the only factual allegations against VWAG relate to conduct outside the United States?

**COMPLAINT ALLEGATIONS AND PRIOR GERMAN AND U.S. PROCEEDINGS**[1]

**A.      Prevent Group and Prevent USA**

Plaintiff Prevent USA is part of Prevent Group, "a network of companies that is engaged in the worldwide supply of various automotive component parts and is owned by the Hastor Family."  (AC ¶ 41.)  Prevent USA is "a wholly-owned subsidiary of Prevent Holding GmbH" (*id.* ¶ 40), a German company, and its sole director, Kenan Hastor, resides in Germany (Nelles Decl. Ex. 1).

Although Prevent USA asserts that it "maintains offices and warehousing" in Texas (AC ¶ 40), it does not allege that it (or any other Prevent Group company) actually does business in Texas or the United States, a conspicuous omission given that other courts have expressed concerns that Prevent Group has no "genuine connection to" this country.  *Prevent I*, 2021 WL 1087661, at *11.  Notably, Plaintiff was incorporated in Texas in April 2022, shortly after *Prevent I* and *Prevent II* concluded (Nelles Decl. Ex. 1), and, in September 2022, merged with "Prevent

---

[1] "A Court may consider matters outside the pleadings in ruling on a motion to dismiss based on *forum non conveniens*," *Ney* v. *3i Grp. PLC*, 2021 WL 8082411, at *8 (W.D. Tex. Apr. 13, 2021), as well as "items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case," *Meyers* v. *Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013).

USA Corporation" (Nelles Decl. Ex. 2), the plaintiff in *Prevent I* that courts have identified as "merely a shell company" "headquartered out of an apartment building in Pittsburgh." *Prevent I Appeal*, 17 F.4th at 657, 660-61.  Kenan Hastor was the sole signatory for both entities in the merger.  (Nelles Decl. Ex. 2.)  The Amended Complaint makes perfectly clear that the entire Prevent Group, *not* Prevent USA, is the real party in interest, plainly stating "Prevent Group brings this action against Volkswagen."  (AC ¶ 35.)

### B.      Volkswagen AG and Volkswagen Group of America

VWAG "is a corporation organized and existing under the laws of Germany with its principal place of business in Wolfsburg, Germany."  (AC ¶ 42.)

VWGoA is a VWAG subsidiary incorporated in New Jersey with its principal place of business in Virginia.  (*Id.* ¶ 43.)  Prevent Group barely mentions VWGoA, asserting only that VWGoA "contributed at least four suppliers" to a purported list of "problematic" suppliers.  (*Id.* ¶¶ 96, 98, 99.)  The Amended Complaint does not allege that Prevent Group was "blocked" from acquiring any of those four suppliers, nor that they are otherwise relevant to this case.

### C.      Prevent Group's Ongoing Litigation in German Courts

Like the Michigan cases that preceded it, "the instant lawsuit is merely the latest in a long series of lawsuits in which Prevent Group companies have claimed in various German courts— without success—that VWAG and its subsidiaries are attempting to put them out of business and/or stop them from acquiring other parts suppliers." *Prevent I*, 2021 WL 1087661, at *12.

In 2016, Prevent Group acquired Car Trim, a German supplier (AC ¶¶ 65, 84), and Car Trim's new management demanded millions of Euros from VWAG.  (Nelles Decl. Ex. 3 ("Hass Decl.") ¶¶ 3-5.)  When VWAG refused, Car Trim and its Prevent Group affiliate, ES Guss,

declared an "immediate delivery freeze."  (*Id.* ¶ 4.)[2]  In August 2016, a German court ordered the Prevent Group entities to resume supply, holding that the "production standstill" was "unjustified" and "threaten[ed] to result in" significant "financial losses" to VWAG.  (Hass Decl. ¶ 5.)  Despite this order, Prevent Group entities continued to threaten supply interruptions.  (*Id.* ¶¶ 8, 15.)  In March 2018, VWAG informed them that it would terminate its business relationships.  (*Id.* ¶ 8.)  A Prevent Group entity moved to enjoin the termination, but German courts denied emergency relief, including because Prevent Group was already selling, and could sell more, parts to other vehicle manufacturers.  (*Id.* ¶ 12.)  Indeed, a Prevent Group entity admitted that it "had already found more than ten new customers" after VWAG stopped doing business with it.  (*Id.* ¶ 11.)

Since then, "a number of German trial and appellate courts" have rejected Prevent Group's "claims of unfair business practices and anticompetitive behavior," *Prevent I Appeal*, 17 F.4th at 656, and concluded that VWAG's decision to stop doing business with Prevent Group was reasonable.  In November 2018, the Higher Regional Court of Dresden held that VWAG did not have a "dominant" or "powerful" position in the purchase of certain Prevent Group products, but that, even if it did, VWAG's conduct was a "legitimate," "good cause" "reaction to the illegal threat" of an "unreliable" supplier.  (Hass Decl. ¶¶ 7-9.)  In February 2019, the Regional Court of Dortmund likewise rejected a Prevent Group entity's antitrust claims, which were based on purported internal VWAG documents about an alleged effort (called "Project 1") to "side-line all supply companies of the Prevent Group."  (*Id.* ¶ 14.)  The court held that VWAG had "no market-dominant position" in purchasing the relevant parts, and that its aim was not "to exploit" any "market power" but "to secure [its] operational processes."  (*Id.* ¶ 16.)  Subsequent decisions have

---

[2] Quotations from German court documents are to certified translations.  The "litigation history" is also described "in depth" at *Prevent I*, 2021 WL 1087661, at *11-16.

emphasized "undisputed personnel-related interconnectedness" between "Prevent Group companies," and the "usurious" prices that Prevent Group coerced from VWAG.  (*Id.* ¶¶ 18, 21).

In December 2019, an alleged assignee of Prevent Group's claims filed another complaint in Germany.  (*Id.* ¶ 22.)  It alleges that VWAG "block[ed]" Prevent Group from "acquisition of shareholdings in other companies" in "South America, North America, [and] Europe"; asserts "monopsony"-based claims; and contends that, through "Project 1," VWAG sought "to prevent the takeover of suppliers by companies of the Prevent Group." (*Id.* ¶ 23.)  This and other actions related to Project 1 are still pending in Germany, including before specialized antitrust courts.

### D.    Prevent Group's Unsuccessful Attempts to Sue in the United States

Prevent Group brought two actions—with substantially identical claims to those asserted here—in the Eastern District of Michigan.  Those cases were dismissed because Prevent Group failed to "show[] a meaningful connection between the alleged injury and the United States" and was engaged in "forum shopping" in an attempt "to open another front on a dispute that should remain in Europe."  *Prevent I Appeal*, 17 F.4th at 656, 660; *Prevent II*, 2021 WL 5585917, at *9.

First, in November 2019, the corporate predecessor of the Plaintiff here and an affiliate brought antitrust, tortious interference, and civil conspiracy claims (the same claims as here) against VWAG and VWGoA (the same defendants as here) based on a theory that VWAG and VWGoA blocked Prevent Group from acquiring other suppliers to preserve a purported "monopsony" in the purchase of automotive component parts (the same theory as here).  In March 2021, the district court dismissed, concluding that all three *forum non conveniens* factors supported dismissal:  (i) "Germany is an available and adequate forum," as "plaintiffs themselves recognize" having filed "several lawsuits against VWAG and its subsidiaries in German courts for unfair competition and antitrust violations arising from their alleged execution of Project 1"; (ii) public and private interest factors "weigh strongly in favor" of litigating in Germany because

the action "concerns a German company's alleged plan (devised in Germany by VWAG and participated in nominally by VWGoA) to stop Prevent Group from acquiring other parts suppliers in Germany, Poland, and Brazil"; any connection to the U.S. is "speculative" at best; and the "vast majority of the evidence" is in Germany; and (iii) plaintiffs' choice of forum is given "little, if any, deference" because the "decision to sue in the United States has nothing to do with convenience and everything to do with forum shopping." *Prevent I*, 2021 WL 1087661, at \*9-11.

Prevent Group appealed to the Sixth Circuit, and, in November 2021, a three-judge panel unanimously affirmed.  The court agreed that "Germany is an adequate forum to hear this case" and that the district court "followed a well-travelled path" in its dismissal.  *Prevent I Appeal*, 17 F.4th at 659-60.  The Sixth Circuit also "share[d] the district court's concern" over Prevent USA's failure to "show[] a meaningful connection between the alleged injury and the United States," and found "legitimate reasons for denying Prevent USA its choice of forum" because it was "merely a shell company" and "the real party in interest is the Prevent Group."  *Id.* at 657, 660-61.

In parallel to *Prevent I*, Prevent Group filed a second action in the Eastern District of Michigan, this time through its subsidiary Prevent DEV GmbH.  As in the German actions, *Prevent I*, and this case, Prevent Group asserted that VWAG sought "to 'demolish'" Prevent Group through "Project 1."  (Nelles Decl. Ex. 4 (*Prevent II* Compl.) ¶¶ 3, 5.)  And, just as here, Prevent Group claimed that, as part of Project 1, VWAG agreed with the suppliers Adient plc and Lear Corporation to "boycott" Prevent Group.  (*Id.* ¶ 92.)  *Prevent II* met the same fate as *Prevent I*:  in November 2021, the case was dismissed on *forum non conveniens* grounds and as barred by the FTAIA.  The court in *Prevent II* agreed with the court in *Prevent I* that "[t]he suit's place of origin is Germany," that "it is disingenuous for Plaintiff to try to separate the instant action from its predecessors" in Germany, and that Prevent Group was engaged in "forum shopping" and "chose

this forum" for "tactical advantage" and not "convenience." *Prevent II*, 2021 WL 5585917, at *7, 9, 15. The court also held that the FTAIA barred Prevent Group's antitrust claims because its alleged injuries arose from foreign, not domestic, conduct and effects. *Id.* at *15-17. Prevent Group did not appeal the dismissal of its complaint in *Prevent II*.

Rather than accept the well-reasoned opinions of three courts, Prevent Group filed this action. As in the prior cases, Prevent Group asserts that "Volkswagen" "blocked" Prevent Group's acquisitions of a *German* supplier (Grammer), a *Polish* supplier (Groclin), and the *Brazilian* operations of a Michigan-based supplier (Tower). (AC ¶¶ 114, 121, 139.)[3] As noted above, most of the allegations in this case are lifted nearly verbatim from the complaints in the prior cases. (*See* Nelles Decl. Ex. 5 (chart showing overlap in, and location of, *Prevent* actors and allegations).)

## ARGUMENT

## I. GERMANY IS THE PROPER FORUM FOR THIS DISPUTE.

This case should be dismissed in favor of a German forum because Prevent Group is precluded from relitigating the *forum non conveniens* issues already decided in *Prevent I* and *Prevent II*, or, alternatively and preclusion notwithstanding, because the *forum non conveniens* factors strongly favor a German forum.

### A. Prevent Group Is Precluded from Relitigating the Proper Forum.

A plaintiff is precluded from relitigating a dispositive issue, and dismissal is required at the pleading stage, where, as here, the issue (i) "is identical to" "one involved in the earlier action," (ii) "was actually litigated in the prior action," and (iii) its determination "was a necessary part of

---

[3] As in its prior complaints, Prevent Group asserts that a *French* supplier (Rioglass), an *Austrian* supplier (Eybl Austria), and a *German* supplier (Car Trim) priced below cost or operated at a loss in selling to VWAG. (AC ¶ 65.) Prevent Group does not pursue claims based on these assertions or attempt to connect these suppliers to the United States.

the judgment." *Test Masters Educ. Servs.* v. *Singh*, 428 F.3d 559, 572 (5th Cir. 2005).  "There is no question that federal district courts in the Fifth Circuit apply collateral estoppel to dismiss suits based on earlier *forum non conveniens* decisions made by other federal courts."  *Parker Drilling*, 2020 WL 8455473, at *1 n.2.[4]  Here, Prevent Group relies on the same antitrust and business tort claims, "Project 1"-related allegations, and monopsony theory already litigated in *Prevent I* and *II*, and the courts in those cases held that the *forum non conveniens* factors require dismissal in favor of a German forum.[5]  The same result should obtain in this action.

New allegations regarding TBP or IAC do not qualify as a sufficiently "significant intervening factual change" to warrant relitigation.  *Test Masters*, 428 F.3d at 572-76.  As to TBP, the Amended Complaint asserts only that TBP is based "in *Slovenia*," that "Prevent Group" was TBP's largest shareholder, and that "Volkswagen" supposedly told TBP that it would not provide any new orders unless TBP bought out Prevent Group's ownership stake.  (AC ¶¶ 21-25 (emphasis added).)  Prevent Group does not even attempt to link this allegation to its causes of action— indeed, it mentions TBP only in the Amended Complaint's introduction—and alleges no connection between TBP and the United States that changes the *forum non conveniens* analysis.

---

[4] *See also Villar* v. *Crowley Mar. Corp.*, 990 F.2d 1489, 1498 (5th Cir. 1993) (precluding plaintiff from relitigating  dismissal on basis of *forum non conveniens*), *abrogated on other grounds by* 145 F.3d 211 (5th Cir. 1998); *Exxon Corp.* v. *Chick Kam Choo*, 817 F.2d 307, 314 (5th Cir. 1987) (same), *rev'd on other grounds*, 486 U.S. 140 (1988); *GESPA Nicar., S.A.* v. *Inabata Eur., GmbH*, 2019 WL 7340304, at *7-10 (W.D. Tex. Dec. 30, 2019) (preclusion barred relitigation of *forum non conveniens* dismissal in favor of German forum).

[5] *See* Nelles Decl. Ex. 5 (chart showing overlap among *Prevent* actions); *compare*, *e.g.*, AC ¶¶ 39, 98, 109 *with* Nelles Decl. Ex. 6 (*Prevent I* Compl.) ¶ 100 *and Prevent II* Compl. ¶¶ 21, 97 (same allegations regarding a purported scheme to preserve VWAG's monopsony power by "foreclos[ing] Prevent Group from the market" through alleged agreements "to block takeover attempts" and "to stop purchasing components from [Prevent]").

As to IAC, Prevent Group's assertion that "Volkswagen" blocked Prevent Group's acquisition of the company is made entirely on "information and belief," and supported by no well-pleaded allegations that either VWAG or VWGoA blocked the acquisition. (AC ¶ 149.)  That is precisely the type of "speculative" allegation that was rejected in *Prevent I*, 2021 WL 1087661, at *9-10.  In any event, Prevent Group acknowledges that IAC is "a *global* automotive component part supplier headquartered in *Luxembourg*."  (AC ¶ 148 (emphasis added).)  Although Prevent Group asserts that IAC has "operations in Arlington, Texas" (*id.*), the U.S.-specific allegations end there.  Prevent Group contends that it tried to acquire IAC as a whole, *not* IAC's alleged operations in Texas, or IAC's broader U.S. operations (which are based out of Michigan, not Texas (Nelles Decl. Ex. 7)).  Accordingly, just as in prior cases, Prevent Group asks this Court to "evaluate the efforts" of a "foreign company" to "stop other foreign companies (the Prevent Group)" from purchasing other "foreign compan[ies]."  *Prevent I*, 2021 WL 1087661, at *9.[6]

Similarly, Prevent Group's reconfiguration of its U.S. subsidiary—from "Prevent USA Corporation" to "Prevent U.S.A. Corporation," with the two now merged—does not alter the conclusion in *Prevent I* that Germany is the appropriate forum regardless of "the creation of an American subsidiary."  *Prevent I Appeal*, 17 F.4th at 661.  That conclusion cannot be relitigated.  *See Villar*, 990 F.2d at 1499 (affirming dismissal because a different federal court previously found that "no court in the United States would be convenient"); *Cotemar S.A. De C.V.* v. *Beaufort*, 190 F. Supp. 3d 577, 587-88 (E.D. La. 2016) (same).  And the addition of periods to the company's name does not change the fact that Prevent USA's interests were sufficiently "represented" in the prior actions.  *See Vines* v. *Univ. of La.*, 398 F.3d 700, 706 (5th Cir. 2005).

---

[6] It is also telling that Prevent Group asserts the *identical* amount of purported damages in this action as it did in *Prevent I*, despite its new allegations.  (*Compare* AC ¶¶ 32, 165 *with Prevent I* Compl. ¶¶ 14, 159 (providing same damages range).)

Finally, Prevent Group's narrowing of the relevant product market to include only automotive component parts purchased by VWAG does not change the preclusion analysis. *See Test Masters*, 428 F.3d at 576 (affirming dismissal despite different "relevant geographical market"). Such "attempts at developing variations on [plaintiff's] theme by arguing slightly different legal theories" are routinely rejected. *Seguros Comercial Ams. S.A.* v. *Am. President Lines, Ltd.*, 933 F. Supp. 1301, 1305 (S.D. Tex. 1996).

### B.     Differences in Circuit Precedent Are Irrelevant to the Preclusion Analysis.

To the extent Prevent Group will argue that its antitrust claims cannot be precluded because the Fifth Circuit and Sixth Circuit apply the *forum non conveniens* doctrine differently in antitrust cases, that argument fails. As discussed below (*infra* at 14-15), the Fifth Circuit's 1982 decision in *Indus. Inv. Dev. Corp.* v. *Mitsui & Co.*, 671 F.2d 876 (5th Cir. 1982), which reasoned that U.S. antitrust claims could not be dismissed in favor of an Indonesian forum, has been vacated and narrowed in the subsequent 40 years. In any event, because Prevent Group has already litigated this case (twice), it cannot relitigate the same issues on which it has already lost in another Circuit.

Litigants are not "entitled to take advantage of a split in the circuits" after "los[ing] in the first jurisdiction." *Yamaha Corp. of Am.* v. *United States*, 745 F. Supp. 734, 737-38 (D.D.C. 1990), *aff'd*, 961 F.2d 245 (D.C. Cir. 1992); *see Nat'l Post Office Mail Handlers* v. *Am. Postal Workers Union*, 907 F.2d 190, 194 (D.C. Cir. 1990) ("issue preclusion counsels against reaching the merits" of the case "regardless of whether we would reject or accept our sister circuit's position"). This is for good reason: otherwise, courts would encourage "the very forum shopping that collateral estoppel was designed to preclude." *Yamaha Corp.*, 745 F. Supp at 738. A "circuit split" "is no justification for ignoring" preclusion, which "exists to prevent this type of *ex post* forum

shopping." *Rajasekaran* v. *Crandall*, 460 F. Supp. 3d 1269, 1279 & n.12 (M.D. Fla. 2020).[7] Indeed, the Supreme Court has emphasized that "preclusion prevent[s] relitigation" even "of wrong decisions just as much as right ones." *B & B Hardware, Inc.* v. *Hargis Indus.*, 575 U.S. 138, 157-58 (2015).

Forum shopping concerns are not abstract here.  Three courts have already held that Prevent Group's "decision to sue in the United States has nothing to do with convenience and everything to do with forum shopping." *Prevent I*, 2021 WL 1087661, at *11.  The lack of any meaningful connection between this case and Texas, and the last-minute reincorporation of a subsidiary in Texas after Prevent Group lost two nearly identical cases, all demonstrate that the forum shopping continues, and that preclusion is necessary to "halt[] plaintiff['s] 'judicial hopscotch.'" *Vasquez* v. *Bridgestone/Firestone, Inc.*, 325 F.3d 665, 675 (5th Cir. 2003).

## C.     Regardless of Preclusion, Prevent Group's Claims Belong in Germany.

Even if *Prevent I* and *II* were not preclusive (they are), those decisions would be instructive as to why the claims here should be dismissed on the basis of *forum non conveniens*.

As a threshold matter, the Fifth Circuit's 1982 decision in *Mitsui*, which determined that an antitrust case could not be dismissed in favor of an Indonesian forum, is not dispositive on this issue, for four reasons.  *First*, *Mitsui* itself is not good law because it was vacated by the Supreme Court, albeit on other grounds.  460 U.S. 1007 (1983).  *Second*, the Fifth Circuit has explained that the "crucial point" in *Mitsui* was to avoid "relegat[ing] a plaintiff to the courts of a nation which does not recognize" basic antitrust principles, *Kempe* v. *Ocean Drilling & Expl. Co.*, 876 F.2d

---

[7] If Prevent Group had wanted to challenge the applicability of the *forum non conveniens* doctrine to its antitrust claims, it could have sought to further appeal *Prevent I*.  It chose not to file a petition for a writ of certiorari.  *See Can* v. *Goodrich Pump & Engine Control Sys.*, 711 F. Supp. 2d 241, 254 (D. Conn. 2010) ("[I]t is not this Court's place to review the merits of, or correct legal errors in, the previous decision"; "the remedy . . . was to seek articulation or to appeal the decision.").

1138, 1142-43 (5th Cir. 1989).  But the "sophisticated" and "broadly similar" antitrust laws in Germany compel the opposite result here.  *Prevent I Appeal*, 17 F.4th at 663.  *Third*, the law has changed since *Mitsui*.  Even putting aside that the First, Second, and Sixth Circuits have all rejected *Mitsui* as wrongly decided, *id.* at 662-63, the Supreme Court has now clarified that antitrust claims can be dismissed even in favor of a foreign private arbitral tribunal, and that "[t]he importance" of the antitrust law remedy "*does not compel the conclusion that it may not be sought outside an American court.*"  *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634-35 (1985) (emphasis added).  *Fourth*, courts in this Circuit have concluded that *Mitsui* "ought at best be confined to its facts."  *Kempe* v. *Ocean Drilling & Expl. Co.*, 683 F. Supp. 1064, 1067 (E.D. La. 1988), *aff'd*, 876 F.2d 1138 (5th Cir. 1989).  For example, the Fifth Circuit has held that claims based on statutes with very similar venue and damages provisions to the Sherman Act can be dismissed on the basis of *forum non conveniens*.  *See Kempe*, 876 F.2d at 1144 (RICO); *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1163 n.25 (5th Cir. 1987) (*en banc*) (Jones Act), *vacated on other grounds by* 490 U.S. 1032.  And the *en banc* Fifth Circuit has even stated that *forum non conveniens* "principles" "apply in *all* cases regardless of their jurisdictional bases or subject matter."  *Air Crash Disaster*, 821 F.2d at 1163 (emphasis in original).

The Court may therefore conduct a *forum non conveniens* analysis that looks at the same three factors considered in *Prevent I* and *II*.  *See O'Keefe* v. *Noble Drilling Corp.*, 347 F. App'x 27, 31 (5th Cir. 2009) (listing same factors).  *First*, as to "whether an adequate alternative forum is available," *id.*, Germany is unquestionably both adequate and available.  "Germany has antitrust laws which cover the exercise of monopoly/monopsony power."  *Prevent II*, 2021 WL 5585917, at *5.  "[T]he fact that Prevent Group companies have filed several lawsuits against VWAG and its subsidiaries in German courts for unfair competition and antitrust violations arising

from their alleged execution of Project 1 is powerful evidence that plaintiffs themselves recognize Germany as an available and adequate forum for the litigation of such disputes." *Id.* at *4.  As the Supreme Court has observed, if "proceedings to resolve the parties' dispute are underway" in a foreign country, that country's courts are particularly likely to be the proper forum.  *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007).  Finally, as expert submissions in prior cases confirm, and as courts have agreed, Prevent USA's claims against both VWAG and VWGoA "could be brought in German courts."  *Prevent I*, 2021 WL 1087661, at *8; (Nelles Decl. Exs. 8-9 (expert declarations in *Prevent I*)).

Private and public interests also favor a German forum.  "[T]hroughout the Complaint," Prevent Group relies on "translations from German" documents (AC ¶ 90 n.6), a fact favoring dismissal, *DTEX, LLC* v. *BBVA Bancomer, S.A.*, 508 F.3d 785, 801 (5th Cir. 2007).  The only party-affiliated individuals referenced in the Amended Complaint (the Hastor family, and VWAG executives and board members (AC ¶¶ 41, 102, 108)), as well as the sole director of Prevent USA (Kenan Hastor), are all located in Germany.  Germany is the place of alleged injury given that "Prevent USA is a wholly-owned subsidiary of Prevent Holding GmbH," a German company (*id.* ¶ 40), and the real party in interest is "the Prevent Group" (*id.* ¶ 35).  The "locus of the alleged culpable conduct" is also Germany, "where Project 1 allegedly was devised."  *Prevent I*, 2021 WL 1087661, at *9-10; (*see* AC ¶¶ 137, 161 (VWAG responsible for "direction" of alleged conduct)). Finally, that "many of the matters of law in this case have already been decided" by German courts "weighs heavily in favor" of litigating there.  *DTEX*, 508 F.3d at 803.

Lastly, Prevent Group's choice of forum deserves no deference.  Deference is inappropriate where a nominally U.S.-based entity "is, for all intents and purposes, a foreign plaintiff," because, for instance, it is a "shell corporation" set up by a foreign parent.  *Rustal Trading US* v. *Makki*, 17

F. App'x 331, 338 & n.6 (6th Cir. 2001) (no deference where plaintiff was a "shell corporation" set up primarily for suing within the U.S.); *see DTEX*, 508 F.3d at 795 (less deference warranted "[w]hen an American corporation doing extensive foreign business brings an action for injury occurring in a foreign country").   Nor need a court give deference where a plaintiff has "unsuccessfully litigated" claims abroad—an indication of "forum shopping." *Ranza* v. *Nike*, 793 F.3d 1059, 1077 (9th Cir. 2015).   Here, as courts have already recognized, "Prevent USA" is a "shell company" and "the litigation history demonstrates that the real party in interest is the Prevent Group," a "foreign plaintiff."  *Prevent I Appeal*, 17 F.4th at 661.

## II.     PREVENT GROUP'S CLAIMS ARE BARRED BY THE FTAIA.

*Prevent II* also holds that the FTAIA bars Prevent Group's claims, and that holding is preclusive.   The FTAIA requires that antitrust claims arise out of "direct, substantial, and reasonably foreseeable effect[s]" on U.S. commerce.   15 U.S.C. § 6a.   In *Prevent II*, the district court enforced the FTAIA bar, because (i) the alleged conduct "necessarily 'involve[d] trade or commerce with foreign nations,'" and (ii) "even assuming that the defendants' anticompetitive conduct caused a 'direct, substantial, and reasonably foreseeable effect' in the United States, any such effect did not 'give[] rise to' Prevent's claim."   2021 WL 5585917, at *15-17.   The problem was fundamental, and reflected a "causal chain [that] goes the wrong way":  to the extent Prevent Group's purported injury (exclusion from the market) had downstream effects in the United States, the injury *preceded*, but did not *arise from*, those effects.  *Id.* at *17.[8]

---

[8] Although the FTAIA was only expressly addressed in *Prevent II*, the *forum non conveniens* holdings in *Prevent I* are also dispositive on the FTAIA issue.  For instance, the Sixth Circuit held that Prevent Group had not "shown a meaningful connection between the alleged injury and the United States," and that Prevent Group's claims relied on "foreign conduct that produces only anticompetitive harm abroad."  *Prevent I Appeal*, 17 F.4th at 659-60.

Regardless of preclusion, the FTAIA bars Prevent Group's antitrust claims.  As in *Prevent I* and *II*, Prevent Group alleges only conduct directed out of, and targeted at, "Brazil, Poland, and Germany," *Prevent I*, 2021 WL 1087661, at *10—and now Slovenia and Luxembourg, where TBP and IAC are based.  Nor is it enough that Prevent Group asserts in conclusory fashion that "Volkswagen's actions" ultimately harmed consumers worldwide, including in the United States. (AC ¶ 33.)  Prevent Group is *not* asserting claims on behalf of any U.S. consumers.  Rather, this *particular* Plaintiff's claims are based on "foreign effect[s]."  *F. Hoffman-La Roche Ltd.* v. *Empagran S.A.*, 542 U.S. 155, 159-60 (2004).  As the Fifth Circuit has explained, an allegation that an "antitrust conspiracy raised prices in the" U.S. is inadequate if "plaintiff's injury did not arise from that domestic anticompetitive effect."  *Den Norske Stats Oljeselskap As* v. *HeereMac Vof*, 241 F.3d 420, 421 (5th Cir. 2001).  And here, just as in *Prevent II*, the alleged "causal chain goes the wrong way" because, even if Prevent Group's purported inability to acquire suppliers somehow affected prices or output in the United States, Prevent Group's alleged injury precedes, and cannot arise from, those effects.  2021 WL 5585917, at *17.

## III.   PREVENT GROUP FAILS TO STATE AN ANTITRUST OR ANY OTHER CLAIM.

### A.   Prevent Group Fails to Plead Multiple Elements of its Antitrust Claims.

For its antitrust claims, Prevent Group must: (i) plead antitrust standing, including "antitrust injury" flowing from an "anticompetitive aspect of the defendant's conduct," *Atl. Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 339 (1990); (ii) "define" and plead "power" in a relevant market, *Ohio* v. *Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018); and (iii) plead a restraint of trade as opposed to permissible unilateral conduct, *id.* at 2289-90.  Prevent Group fails on all three counts, and each provides an independent and adequate basis for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1.    *Prevent Group Does Not Plead Antitrust Standing.*

Antitrust standing limits recovery to "the type of injury the antitrust laws were designed to prevent." *Jebaco, Inc.* v. *Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009).  Plaintiffs cannot recover if they were "injured by increased, not decreased, competition." *Id.* at 319.  An antitrust plaintiff must also demonstrate that it is a "proper plaintiff" and "other parties are not better situated to bring suit." *Id.*  Here, Prevent Group lacks antitrust standing because (i) it asserts only injury to itself; (ii) based on an increase in competition; and (iii) that injury is speculative and indirect.

Prevent Group Asserts Injury Only to Itself. The theory of liability in the Amended Complaint is that Prevent Group was "foreclosed" from its "ability to compete in the market for Volkswagen automotive component parts."  (AC ¶ 159.)  That theory is at odds with the purpose of antitrust to "protect competition, not competitors."  *Jebaco*, 587 F.3d at 320.  It is well established that "the elimination of a single competitor is not sufficient to state an antitrust injury." *Mai Larsen Designs* v. *Want2Scrap, LLC*, 2019 WL 2343019, at *10 (W.D. Tex. June 3, 2019).[9]

In the very rare cases where courts have found antitrust injury based on a single company's foreclosure, the plaintiff was a direct competitor of the defendant and was completely foreclosed from a market in which the parties competed against one another, resulting in less competition. *See, e.g.*, *Doctor's Hosp. of Jefferson, Inc.* v. *Southeast Med. All.*, 123 F.3d 301 (5th Cir. 1997) (parties were "competing hospital[s]," and defendants allegedly conspired to remove plaintiff from a hospital alliance to weaken it as a competitor in a specific geographic hospital market).  Prevent

---

[9] *See PSKS, Inc.* v. *Leegin Creative Leather Prods.*, 615 F.3d 412, 419 (5th Cir. 2010) (termination of plaintiff as retailer of defendant's products is not an anticompetitive injury); *Ginzburg* v. *Mem'l Healthcare Sys.*, 993 F. Supp. 998, 1019 (S.D. Tex. 1997) (foreclosed plaintiff suffered "merely injuries to herself as a competitor, damages which are not actionable under the antitrust laws").

Group admits as much when it asserts that a "foreclosed supplier" has antitrust standing, "*if at all*," where defendant "forecloses so much patronage from *rival suppliers* as to weaken competition in the supplying market."  (AC ¶ 158 (emphasis added).)  Prevent Group does not allege that VWAG or VWGoA competes with Prevent Group in the supply of Volkswagen component parts—on the contrary, it acknowledges that they do not.  (*See id.* ¶ 46 ("[l]arge carmakers," like VWAG, "do not manufacture . . . parts themselves").)

<u>Worse, Prevent Group Asserts Injury Based on *More* Competition</u>.  Not only does Prevent Group fail to allege a reduction in competition, it actually asserts that its injury was caused by *increased* competition among *more* suppliers as the result of *fewer* horizontal mergers.  (AC ¶ 159.)  This effectively amounts to an *anti*-antitrust claim.  At the risk of stating the obvious, an injury based on increased competition is not antitrust injury, and a plaintiff that complains that it was "depriv[ed] of the benefits of increased concentration" is not a proper antitrust plaintiff.  *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).  Indeed, it is "inimical to the antitrust laws to award damages for losses stemming from continued competition."  *Cargill, Inc.* v. *Monfort of Colo., Inc.*, 479 U.S. 104, 109-10 (1986).

The Fifth Circuit has applied these principles in a case very similar to this one, where a plaintiff claimed antitrust injury for lost profits resulting from the "defendant's interference with [plaintiff's] attempt to acquire" its competitor.  *Bayou Bottling, Inc.* v. *Dr. Pepper Co.*, 725 F.2d 300, 302 (5th Cir. 1984).  The Fifth Circuit held that the plaintiff's alleged losses from its "failure to acquire the [target] *does not constitute an antitrust injury*" and that plaintiff's theory was "*foreclosed*" by Supreme Court precedent.  *Id.* at 304 (emphasis added).[10]

---

[10] *See also White Mule Co.* v. *ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 889 (N.D. Ohio 2008) (no antitrust injury where defendant, an alleged monopolist, purportedly blocked the "sale of [plaintiffs' company] to a potential purchaser").

Prevent Group also cannot get around its lack of antitrust injury through a convoluted (and, in its own words, "counterintuitive") theory that the ultimate impact of the alleged conduct was prices for Volkswagen component parts that are *too low*, resulting in reduced supply of those parts in the long run and, potentially, higher prices for automobile consumers.  (AC ¶ 63.)[11]  Courts are skeptical of claims based on lower prices, which are "the very essence of competition."  *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).  That is why courts approach "monopsony" cases based on allegedly too-low prices (as here) warily, and require that plaintiffs plead concrete, not speculative, harm to "consumers or competitors."  *Jebaco*, 587 F.3d at 322.  Here, Prevent Group does not even purport to sue as a consumer or competitor, and does not plead (much less concretely plead) that consumers or competitors suffered harm.

Prevent Group Is Not a Proper Antitrust Plaintiff.  Finally, Prevent Group is not a "proper plaintiff" because, even assuming it suffered antitrust injuries, (i) such "injuries" and "their causal link to the defendant[s] are speculative," and (ii) "other parties have been more directly harmed."  *Norris* v. *Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007).  *First*, Prevent Group's alleged harms— "lost profits" from theoretical acquisitions, and ensuing loss to "industry goodwill," "market reputation," and "overall valuation" (AC ¶¶ 31, 167)—are highly "speculative," a tipoff that

---

[11] Prevent Group cites theoretical concerns in a treatise about how buying cartels (which are not at issue here) may, by lowering input prices, cause output to decrease and consumers to pay higher prices in the long run.  (AC ¶ 63.)  But the same treatise explains that a buying cartel can increase prices only if it "has market power downstream."  Philip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW ("Areeda & Hovenkamp") ¶ 350b n.3 (2022); *see Addamax Corp.* v. *Open Software Found., Inc.*, 888 F. Supp. 274, 280 (D. Mass. 1995) ("Only with control of a downstream market can the monopsonist decrease output and raise prices.").  "[I]f [a] monopsonist resells in a competitive market, price and output in the output market will be unaffected by the exercise of monopsony power."  Areeda & Hovenkamp ¶¶ 575, 980, 2011b; *see Muenster Butane, Inc.* v. *Stewart Co.*, 651 F.2d 292, 297 (5th Cir. 1981) ("[A]s long as interbrand competition acts as a 'significant check on the exploitation of intrabrand market power,' a supplier's termination . . . is not a violation of the antitrust laws.").  Prevent Group provides no allegations regarding the downstream market for automobile sales, and that market is undoubtedly competitive.

Prevent Group is not an "efficient enforcer" of the antitrust laws.  *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 143 (2d Cir. 2021).  The causal link between the purported blocking of acquisitions by VWAG and Prevent Group's alleged injury is also attenuated.  Without any blocking, the acquisition targets might have decided it was not in their interests to be acquired by Prevent Group.  For instance, Prevent Group asserts that Volkswagen tried to convince Grammer executives and directors that an acquisition by Prevent Group was a bad idea, but notes that, months later, "Grammer shareholders voted to back management and block Prevent Group's acquisition attempt."  (AC ¶ 120.)  That decision by shareholders is an intervening cause that underscores the tenuous nature of the chain of causation underlying Prevent Group's claims.

*Second*, Prevent Group is not a proper plaintiff because its injury is indirect.  As discussed, Prevent Group is "neither a consumer nor a competitor" of VWAG or VWGoA, and did not itself suffer from any purported downstream price increase.  *Norris*, 500 F.3d at 465-67.  Nor is Prevent Group the correct plaintiff to sue on behalf of "weak suppliers" with "'high dependency' on Volkswagen" (AC ¶ 17), since, by its own admission, it is not actually a supplier to VWAG or VWGoA.  Even if, as Prevent Group claims, VWAG somehow extracted a "below" market price for automotive parts (*id.* ¶ 33), it is the suppliers who were forced to accept those low prices that might conceivably be "injured" under the antitrust laws, *Addamax Corp.* v. *Open Software Found., Inc.*, 152 F.3d 48, 53 (1st Cir. 1998), and *not* Prevent Group.

2. *Prevent Group Does Not Plead Market Power in a Properly Defined Market.*

To survive a motion to dismiss, Prevent Group must also plead "the possession of monopoly power in the relevant market."  *Whitehurst* v. *Showtime Networks, Inc.*, 2009 WL 3052663, at *10 (E.D. Tex. Sep. 22, 2009).  Failure to properly define the relevant market is

grounds for dismissal.  *New Orleans Ass'n of Cemetery Tour Guides & Cos.* v. *New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1037, 1039 (5th Cir. 2023).

Prevent Group defines the "relevant market [a]s the worldwide market for Volkswagen automotive component parts" (AC ¶ 177), but this definition raises a fundamental problem:  a market generally "cannot be limited to a single product."  *Whitehurst*, 2009 WL 3052663, at *11. The Fifth Circuit consistently rejects similar efforts to define markets that include only a single defendant's products.  *See*, *e.g.*, *PSKS*, 615 F.3d at 418 (court "correctly rejected the claim that Brighton products constitute their own market"); *Domed Stadium Hotel, Inc.* v. *Holiday Inns. Inc.*, 732 F.2d 480, 482, 488 (5th Cir. 1984) (plaintiff could not define the market as "Holiday Inn hotel rooms," rather than hotel rooms generally); *L.G. Motorsports, Inc.* v. *NGMCO, Inc.*, 2012 WL 718603, at *4 (E.D. Tex. Mar. 6, 2012) (market for Michelin tires is legally insufficient).

The Southern District of Texas's decision in a similar case, in which automotive suppliers brought antitrust claims based on Volvo's alleged "monopsony" over "the market for computer systems used by Volvo," is illustrative.  *Univ. Comput. Sys.* v. *Volvo Cars of N. Am.*, 1997 WL 1433879, at *5 (S.D. Tex. Sep. 29, 1997).  The court held that "[p]laintiffs['] attempt to confine the relevant market to Volvo and its retail dealers" was "unavailing and will not support an antitrust claim."  *Id.*  "[A]s a matter of common sense[,] a single purchaser of a product cannot generally be considered a relevant market, lest we wish to clothe each and every sale with an antitrust suit." *Id.* (quoting *Jayco Sys.* v. *Savin Bus. Mach. Corp.*, 777 F.2d 306, 320 (5th Cir. 1985)).

Prevent Group cites no "rare circumstances" that could justify a market limited to Volkswagen component parts.  *See PSKS*, 615 F.3d at 418.[12]  Although the Amended Complaint

---

[12] Such circumstances were found in *Eastman Kodak* v. *Image Tech. Servs.*, 504 U.S. 451 (1992), but *Kodak* has been "distinguished easily" and limited to cases (unlike this one) that involve tying

emphasizes "information and switching costs," such costs do not "render[] an otherwise invalid relevant market valid." *Queen City Pizza, Inc.* v. *Domino's Pizza, Inc.*, 124 F.3d 430, 439 (3d Cir. 1997). Prevent Group also cites "contractual costs" suppliers face during "the contract period" with "Volkswagen" (*e.g.*, AC ¶¶ 69-70), but courts agree that "[e]conomic power derived from contractual agreements 'has nothing to do with market power, ultimate consumers' welfare, or antitrust.'" *United Farmers Agents Ass'n* v. *Farmers Ins. Exch.*, 89 F.3d 233, 236-37 (5th Cir. 1996).[13] And Prevent Group does not explain why it could not alter its operations in relatively short order—certainly during the seven years it has been feuding with VWAG—to produce component parts for other vehicle manufacturers. *See Ginzburg*, 993 F. Supp. at 1016 (rejecting claims based on "restriction of a physician's privileges to practice at a particular hospital," since her "ability to practice medicine was not extinguished."). If "Volkswagen" is *uniquely* oppressive towards suppliers (AC ¶ 93), then Prevent Group should have done what was necessary to sell component parts to other vehicle manufacturers.

German court decisions also undermine Prevent Group's claims of market power, and should be treated as preclusive here.[14] German courts have found that Prevent Group entities

---

products in two different markets and where "the parties [a]re in direct competition with each other in the marketplace." *Volvo Cars*, 1997 WL 1433879, at *5 n.2.

[13] *See Maris Distrib. Co.* v. *Anheuser-Busch, Inc.*, 302 F.3d 1207, 1222 (11th Cir. 2002) ("[T]hat Anheuser-Busch had considerable power over many aspects of Maris's business by virtue of the provisions of the contract to which they agreed . . . reveals little about the issue of whether Anheuser-Busch had market power in the broader, relevant market.").

[14] "Under principles of international comity, a foreign court's judgment on a matter is conclusive in a federal court when (1) the foreign judgment was rendered by a court of competent jurisdiction, which had jurisdiction over the cause and the parties, (2) the judgment is supported by due allegations and proof, (3) the relevant parties had an opportunity to be heard, (4) the foreign court follows procedural rules, and (5) the foreign proceedings are stated in a clear and formal record." *Int'l Transactions, Ltd.* v. *Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003). All five factors are satisfied here.

"undisputedly" could sell component parts to other vehicle manufacturers, and have noted a Prevent Group entity's admission that it "already found more than ten new customers" after VWAG terminated the parties' relationship. (Hass Decl. ¶ 11.) Courts have also rejected the claim that VWAG had a "dominant" or "powerful" market position, and have concluded that Prevent Group entities exercised *their* market power to force Volkswagen to pay "usurious" prices for Prevent Group's products. (Hass Decl. ¶¶ 7-9, 21.) These judicial findings cannot be reconciled with Prevent Group's assertion that VWAG had market power.

       *3.*      *Prevent Group Does Not Plead an Unreasonable Restraint of Trade.*

Prevent Group also has "not sufficiently pled any facts that" either defendant "acted in any way abrogating its *lawful right to refuse to do business with whomever it chooses* under the federal antitrust laws." *Whitehurst*, 2009 WL 3052663, at *14 (emphasis added).

At worst, Prevent Group claims that VWAG decided that it did not want to do business with companies owned by the Prevent Group, or to buy directly or indirectly parts manufactured by Prevent Group. Such conduct is consistent with the bedrock principle that a company has the "unquestioned right to stop dealing" with a counterparty "for reasons sufficient to [itself]." *United States* v. *Colgate & Co.*, 250 U.S. 300, 307 (1919); *see NYNEX Corp.* v. *Discon, Inc.*, 525 U.S. 128, 137 (1998) ("freedom to switch suppliers lies close to the heart of the competitive process that the antitrust laws seek to encourage"). The Fifth Circuit applies this principle regardless of whether the defendant allegedly entered into agreements with third parties in connection with its refusal to deal. *See BRFHH Shreveport, LLC* v. *Willis-Knighton Med. Ctr.*, 49 F.4th 520, 529-31 (5th Cir. 2022) (affirming dismissal where defendant allegedly agreed with supplier to stop doing business with plaintiff).

In an effort to bridge the gap between the alleged conduct and the reach of the antitrust laws, Prevent Group asserts that VWAG's refusal to deal was in service of maintaining a

"monopsony."  In the 133-year history of the Sherman Act, no court has ever recognized this type of conduct as actionable.  Rather, to even have a chance of pleading a monopsony claim, "a plaintiff must allege . . . conduct by the monopsonist that *excludes its rivals—i.e.*, *other buyers in the same market*."  *Cable Line, Inc.* v. *Comcast Cable Commc'ns*, 767 F. App'x 348, 351 (3d Cir. 2019) (emphasis added).[15]  Prevent Group does not—and cannot—allege that it is in the same market as VWAG or VWGoA.

Prevent Group's theory also makes no sense as a matter of basic economics.  Prevent Group claims that VWAG sought to keep component suppliers "on the brink of insolvency" (AC ¶ 4), but, as the same treatise cited by Prevent Group explains, "[b]uyers are benefitted rather than injured by high-quality products and effective competition in the supply market."  Areeda & Hovenkamp ¶ 2204a.  Thus, "if the monopolist refuses to deal with some suppliers or customers, it will usually have a legitimate business reason for doing so."  *Id.* ¶ 774d.  VWAG had no incentive to starve its suppliers or to cause "a substantial reduction in market output" of component parts for Volkswagen vehicles (AC ¶ 164), which would endanger VWAG's ability to compete with other manufacturers.  *See Weiss* v. *York Hosp.*, 745 F.2d 786, 828 (3d Cir. 1984) ("Excluding [suppliers] is likely to weaken York's monopoly position in the long run, since a potential rival . . . would have an incentive to provide competing services for the [suppliers] excluded from York.").[16]

---

[15] *See Dunn & Mavis, Inc.* v. *Nu-Car Driveaway, Inc.*, 691 F.2d 241, 243-45 (6th Cir. 1982) (affirming dismissal because "multiple [competing] dealers" were not collectively seeking to exclude a competitor); *White Mule*, 540 F. Supp. 2d at 889 ("[P]laintiffs in non-price monopsony cases are usually the monopsonist's competitors who have lost access to their suppliers.").

[16] Prevent Group's assertion that VWAG is a monopsonist with nearly unchecked power over the purchase of Volkswagen automotive parts is also in significant tension with its assertion that VWAG needed to block Prevent Group acquisitions.  If VWAG had "market dominance" (AC ¶ 4), it would be able to dictate terms to component suppliers even if there were fewer of them.

Similarly, it would be contrary to VWAG's economic interest to exclude Prevent Group if, as Prevent Group asserts, it was the "cheapest, most efficient" supplier and "price-leader." (AC ¶¶ 106, 192); *Matsushita*, 475 U.S. at 587 (rejecting liability where "defendant lacked any rational motive to join the alleged boycott" and "its refusal to deal was consistent with the defendant's independent interest"). VWAG would want to deal with the lowest cost supplier of component parts to save money. So, the only economically rational explanation is that VWAG had valid reasons for refusing to do business with the Prevent Group.

That is the finding of "a number of German trial and appellate courts." *Prevent I Appeal*, 17 F.4th at 656. Those courts have held that VWAG did not refuse to deal with Prevent Group "to exploit" "market power," but as a "legitimate," "good cause" "reaction to the illegal threat" posed by an "unreliable" supplier. (Hass Decl. ¶¶ 7-9, 16.) The German court findings are preclusive (*supra* at 24 n.14), and defeat any claim that VWAG engaged in an unreasonable restraint of trade.

### B.    Prevent Group's State Law Claims Must Be Dismissed.

Prevent Group also fails to plead a state law claim. *First*, "[b]ecause the Texas Free Enterprise and Antitrust Act utilizes the same standards as the Sherman Act for establishing a violation," *Abraham & Veneklasen* v. *Am. Quarter Horse Ass'n*, 776 F.3d 321, 325 n.1 (5th Cir. 2015), "the same defects that require dismissal of" Prevent Group's federal antitrust claims "equally compel dismissal of the Texas antitrust claim[s]," *JSW Steel (USA) Inc.* v. *Nucor Corp.*, 586 F. Supp. 3d 585, 601 (S.D. Tex. 2022).

*Second*, because Prevent Group rests its tortious interference claim on the same conduct underlying its antitrust claims (*see* AC ¶ 195), those "claims rise and fall together." *Stewart Glass & Mirror, Inc.* v. *U.S. Auto Glass Discount Ctrs., Inc.*, 200 F.3d 307, 316 (5th Cir. 2000). Just as Prevent Group's "antitrust claims are unsubstantiated, so must be the tortious interference claims." *Id.* In any case, Prevent Group fails to adequately plead that any alleged interference with its

acquisitions was malicious or motivated by something other than the legitimate business reasons cited by multiple German courts.  (*See supra* at 6-8); *Hunn* v. *Dan Wilson Homes, Inc.*, 2013 WL 12128677, at *12 n.22 (N.D. Tex. Sep. 23, 2013) ("a claim of tortious interference with prospective business relations will not lie if the interfering party acted to protect his own legitimate interests").

*Finally*, Prevent Group fails to adequately plead "unlawful, overt acts" required for its civil conspiracy claim.  *United Biologics, LLC* v. *Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 208 (5th Cir. 2020).  Civil conspiracy is a "derivative tort," meaning that VWAG's "liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold [VWAG] liable."  *Tilton* v. *Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). The civil conspiracy claim rises and (in this case) falls with Prevent Group's other claims.

### C.    Prevent Group Makes No Relevant Allegations Regarding VWGoA.

Prevent Group's allegations are collectively inadequate to state a claim against either Defendant, but its *one* substantive allegation regarding VWGoA is especially deficient.  Prevent Group alleges only that VWGoA "contributed at least four suppliers" to a purported list of "Problematic Suppliers," and identifies one of those four suppliers as "FTE."  (AC ¶ 99.)  There is not a single other allegation in the Amended Complaint about FTE (or the other three unidentified suppliers), and no effort to link VWGoA to Prevent Group's theory of liability.

Prevent Group "cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group."  *Wiltfong* v. *Cal. State Bd. of Acct.*, 2018 WL 935398, at *2 (W.D. Tex. Feb. 16, 2018).  The only reasonable inference is that Prevent Group included VWGoA as a defendant in an effort to manufacture a connection to the United States. Indeed, the district court in *Prevent I* criticized Prevent Group for including the same irrelevant allegation regarding VWGoA and FTE in an effort to obscure the fact that the dispute was all about conduct allegedly "conceived in Germany."  2021 WL 1087661, at *2 n.2.

## IV.    PREVENT GROUP FAILS TO PLEAD PERSONAL JURISDICTION OVER VWAG.

Prevent Group "has the burden to make a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs.* v. *Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (affirming dismissal for failure to plead personal jurisdiction).  As to foreign defendants, like VWAG, "[g]reat care and reserve should be exercised" in finding personal jurisdiction.  *Asahi Metal Indus. Co.* v. *Superior Ct.*, 480 U.S. 102, 115 (1987).  Because Prevent Group has not met its burden, its claims must also be dismissed under Federal Rule of Civil Procedure 12(b)(2).

Prevent Group does not even attempt to plead that this Court has general jurisdiction over VWAG.  To determine whether general jurisdiction exists, courts consider the company's "place of incorporation" and "principal place of business," *Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014), but Prevent Group concedes that VWAG is incorporated and has its principal place of business in Germany (AC ¶ 42).  Prevent Group's assertion that VWAG "manufactures, distributes, and markets vehicles for sale" in the United States "[t]hrough" VWGoA (*id.* ¶ 43) is irrelevant, because the Supreme Court has held that allegations regarding even "continuous and systematic" in-forum sales by a domestic subsidiary of a foreign vehicle manufacturer are insufficient to establish general personal jurisdiction.  *Daimler*, 571 U.S. at 139.

Nor does Prevent Group plead specific personal jurisdiction over VWAG.  "For the exercise of specific jurisdiction to comply with due process, the *suit* must arise out of or relate to the defendant's contacts with the *forum*."  *Inmar Rx Sols., Inc.* v. *Devos, Ltd.*, 786 F. App'x 445, 448 (5th Cir. 2019) (emphasis in original).  As the *en banc* Fifth Circuit emphasized last year, "a foreign corporation's contacts satisfy Fifth Amendment due process *only* in cases where the parties' dispute arose out of or related to those United States contacts."  *Douglass* v. *Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 238 (5th Cir. 2022) (*en banc*) (emphasis added).

Prevent Group does not plead that its claims arise out of or relate to VWAG's conduct in the United States.  The Amended Complaint discusses five instances of purported "blocking" of Prevent Group's acquisition or ownership of other suppliers, but they involve a German supplier (Grammer), a Polish supplier (Groclin), the Brazilian operations of a Michigan-headquartered supplier (Tower), a Slovenian supplier (TBP), and a Luxembourger supplier (IAC).  (AC ¶¶ 21, 114, 121, 139, 148.)  The cursory allegation that IAC had "operations in Arlington, Texas" (*id.* ¶ 148) is of no consequence because Prevent Group does not allege that it sought to acquire only those operations, and provides no well-pleaded factual allegation that VWAG did anything to block the acquisition of IAC, much less that it did so through actions in the U.S.  (*Supra* at 12.)

Prevent Group's assertion that it is "plausible to infer" from the foreign conduct alleged in the Amended Complaint that VWAG entered into similar agreements with target companies based in the United States (AC ¶ 150) is sheer speculation, and courts reject similar invitations to infer that "if it happened, there, it could have happened here."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007); *see Prevent I*, 2021 WL 1087661, at *9-10 (holding that Prevent USA's assertions regarding connections to the United States "are speculative and carry little, if any, weight").  At its core, "this lawsuit is oriented almost exclusively toward activity that has taken place or may eventually take place in" Europe, and the claims "have, at most, a superficial and highly attenuated connection to the minimal activity that took place in" this forum.  *ITL Int'l, Inc.* v. *Constenla*, 669 F.3d 493, 500 (5th Cir. 2012).

## CONCLUSION

Prevent Group's claims in this case are precluded by *Prevent I* and *Prevent II*.  As those courts held, this case belongs in Germany.  Prevent Group also fails to state an antitrust or other claim, and fails to plead personal jurisdiction over VWAG.  This Court should grant Defendants' motion and dismiss the Amended Complaint.

February 10, 2023                          Respectfully submitted,

                                           */s/ Sharon L. Nelles*

Michael Smith                              Sharon L. Nelles (admitted *pro hac vice*)
State Bar No. 18650410                         New York State Bar No. 2613073
SCHEEF & STONE, LLP                        Steven L. Holley (admitted *pro hac vice*)
113 East Austin Street                     Suhana S. Han (admitted *pro hac vice*)
Marshall, Texas 75670                      Leonid Traps (admitted *pro hac vice*)
Tel: (903) 938-8900                        Jessica H. Goldman (admitted *pro hac vice*)
michael.smith@solidcounsel.com             SULLIVAN & CROMWELL LLP
                                           125 Broad Street
                                           New York, New York 10004
                                           Tel: (212) 558-4000
                                           nelless@sullcrom.com
                                           holleys@sullcrom.com
                                           hans@sullcrom.com
                                           trapsl@sullcrom.com
                                           goldmanj@sullcrom.com

                                           *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

Respectfully submitted,

*/s/ Sharon L. Nelles*