IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PREVENT U.S.A. CORPORATION, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-CV-00506-JRG-RSP |
| § | |
| VOLKSWAGEN, AG and § | |
| VOLKSWAGEN GROUP OF AMERICA, § | |
| INCORPORATED, § | |
| § | |
| *Defendants*. § | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Volkswagen, AG and Volkswagen Group of America, Incorporated's (together, "Volkswagen") Motion to Dismiss. **Dkt. No. 20**. The motion should be **DENIED**.

**I.      BACKGROUND**

This is the third chapter of an ongoing litigation saga. The Prevent Group, a group of affiliated international automotive component part suppliers, and Volkswagen, AG, an automobile manufacturer, have been embroiled in litigation concerning allegations of unfair business practices and anticompetitive behavior for seven years.

The first chapter of litigation began in 2016 and remains ongoing in Germany.[1] The second chapter began in 2019, in which two affiliates of the Prevent Group: Eastern Horizon Group, based in the Netherlands, and Prevent USA Corporation, brought antitrust and business tort claims against Volkswagen in the Eastern District of Michigan, which were dismissed on the basis of *forum non conveniens*. *Prevent USA Corp.* v. *Volkswagen AG*, 2021 WL 1087661, at *17 (E.D.

---

[1] A detailed explanation of the ongoing German proceedings can be found in the *Prevent I*, *Prevent I Appeal*, and *Prevent II* cases.

1

Mich. Mar. 22, 2021) ("*Prevent I*") *aff'd* 17 F.4th 653 (6th Cir. 2021) ("*Prevent I Appeal*")[2]. Another affiliate of the Prevent Group then brought federal antitrust, state antitrust, tortious interference, and civil conspiracy claims against Adient PLC, Lear Corporation, Volkswagen, AG, and Ralf Brandstätter, in the Eastern District of Michigan. The court dismissed that action on the basis of *forum non conveniens* while separately concluding the antitrust claims were barred by the Foreign Trade Antitrust Improvements Act of 1992 (FTAIA). *Prevent DEV GmbH v. Adient PLC*, No. 20-CV-13137, 2021 WL 5585917, at *17 (E.D. Mich. Nov. 30, 2021) ("*Prevent II*").

Now, in the third chapter, Prevent U.S.A. Corporation ("Prevent USA"), which now includes the Prevent USA entity of the *Prevent II* case, brings suit in the Eastern District of Texas. Prevent USA contends that amidst seemingly promising discussions to acquire an Arlington, Texas facility owned by International Automotive Components Group (IAC), the deal ultimately fell through because Volkswagen forced IAC to discontinue negotiations with Prevent USA. First Amended Complaint (FAC), Dkt. No. 4 at ¶¶ 147-149.[3] Prevent USA alleges six separate causes of action: (1) agreement in restraint of trade in violation of § 1 of the Sherman Act; (2) monopsonization in violation of § 2 of the Sherman Act; (3) tortious interference with business relationship and/or expectancy; (4) civil conspiracy; (5) an agreement in restraint of trade in violation of Texas antitrust law, Tex. Bus. & Com. Code Ann. § 15.05; and (6) monopsonization in violation of Texas antitrust law. *Id.* at ¶¶ 173-224.

---

[2] In discussing whether Germany was an adequate alternative forum, the Sixth Circuit stated that "it may be the case—we need not finally decide—that claims dismissed on forum non conveniens grounds may be refiled in federal court if the alternative forum itself declines to exercise jurisdiction or otherwise determines it lacks authority." *Prevent I Appeal*, 17 F.4th at 659 (emphasis added)
[3] Citations, including the page numbers correspond to those assigned through ECF.

## II.   ANALYSIS

Volkswagen moves to dismiss this case on five independent grounds: (1) issue preclusion; (2) *forum non conveniens*; (3) claims barred by the FTAIA; (4) failure to state a claim; and (5) lack of personal jurisdiction.

### A. Issue Preclusion

There are two disputes regarding issue preclusion. First, do the *forum non conveniens* dismissals from *Prevent I*, which was affirmed by the Sixth Circuit, and *Prevent II* bar Prevent USA from bringing this suit? Second, does the holding in *Prevent II*, barring the claims under the FTAIA, preclude Prevent USA from bringing this suit?

   1.   <u>There is No Issue Preclusion as to Forum Non Conveniens</u>

Is Prevent USA precluded from litigating the appropriate forum for this dispute because of the *forum non conveniens* dismissals in *Prevent I* and *Prevent II*? No.

Collateral estoppel or "issue preclusion" bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001)). To establish collateral estoppel, a party must show "(1) that the issue at stake [is] identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir.2009) (citing *Wehling v. CBS*, c, 508 (5th Cir.1983)). "The parties to the suits need not be completely identical, so long as the party

3

against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Id.* (citing *Wehling*, 721 F.2d at 508).

A dismissal without prejudice based on *forum non conveniens* generally does not bar a second action in another venue. 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4436 (3d ed. 2023). However, the *forum non conveniens* judgment precludes relitigation of the precise venue issue that led to the initial dismissal. *Id.* In other words, "[d]ismissal on *forum non conveniens* grounds does not establish claim preclusion; ordinarily it cannot work issue preclusion as to other courts because the convenience issues are intrinsically different, *but issue preclusion is appropriate if the issue actually remains the same*." *Id.* (emphasis added). Applying these principles, the Fifth Circuit has held that "a plaintiff may not relitigate a *forum non conveniens* issue unless he can show some objective facts that materially alter the considerations underlying the previous resolution." *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1498 (5th Cir.1993), *abrogated on other grounds*, *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir.1999).[4]

This issue comes down to whether the issue at stake is identical to the one involved in the prior litigation. Volkswagen contends that the issue is identical because the *forum non conveniens* issue is properly analyzed within the broader issue preclusion framework. Prevent USA disagrees. The Fifth Circuit has held that "collateral estoppel does not apply unless the facts and *legal standards used to assess those facts* are the same in both proceedings." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 284 (5th Cir. 2006) (emphasis is original) (citation omitted).

---

[4] The *Test Masters* case cited by Volkswagen articulates a "significant intervening factual change" test, which, if satisfied, allows for relitigating whether a trademark has acquired secondary meaning at a later time without being barred by issue preclusion. *Test Masters Educ. Servs.* v. *Singh*, 428 F.3d 559, 572 (5th Cir. 2005). Accordingly, the Court follows the test articulated in *Villar*, which dealt with *forum non conveniens*, rather than the one in *Test Masters*.

4

First, Volkswagen argues that the legal standards are the same because the Fifth and Sixth Circuits apply the same federal *forum non conveniens* principles and factors, and the same *forum non conveniens* issue has already been litigated and decided. Reply, Dkt. No. 27 at 8 (citing *Vasquez* v. *Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003)). Therefore, Volkswagen argues, a circuit split regarding the application of *forum non conveniens* is irrelevant to the preclusive effect of the prior dismissal. Motion, Dkt. No. 20 at 22-23 (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154, 135 S. Ct. 1293, 1307, 191 L. Ed. 2d 222 (2015) (holding "if federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently. A contrary rule would encourage the very evils that issue preclusion helps to prevent"); *id.* at 157 ("issue preclusion prevent[s] relitigation of wrong decisions just as much as right ones") (internal quotations and citations omitted); *Yamaha Corp. of Am. v. United States*, 745 F. Supp. 734, 737-38 (D.D.C. 1990), aff'd, 961 F.2d 245 (D.C. Cir. 1992) (holding litigants are not "entitled to take advantage of a split in the circuits" after "los[ing] in the first jurisdiction"); *Nat'l Post Office Mail Handlers* v. *Am. Postal Workers Union*, 907 F.2d 190, 194 (D.C. Cir. 1990) (holding "issue preclusion counsels against reaching the merits" of the case "regardless of whether we would reject or accept our sister circuit's position").

Prevent USA responds that the legal standards in this case are different because binding Fifth Circuit precedent does not allow dismissal of antitrust cases on *forum non conveniens* grounds. Thus, *Prevent I* and *Prevent I Appeal* could not have had a preclusive effect. Response, Dkt. No. 24 at 18-19 (citing *Industrial Investment Development Corp. v. Mitsui & Co.*, 671 F.2d 876, 890-91 (5th Cir. 1982) (holding that "[t]he common law doctrine of *forum non conveniens* is inapplicable to suits brought under the United States antitrust laws" based on the Supreme Court's

5

decision *United States v. National City Lines, Inc.*, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948)), *cert. granted, judgment vacated sub nom. Mitsui & Co. v. Indus. Inv. Devlopment Corp.*, 460 U.S. 1007, 103 S. Ct. 1244, 75 L. Ed. 2d 475 (1983)).

Here, the Court finds that the legal standards are different because *Mitsui* remains specific, binding Fifth Circuit precedent establishing that *forum non conveniens* is simply inapplicable to suits brought under the United States antitrust laws. 671 F.2d at 890-91. While the Supreme Court vacated the decision, the Fifth Circuit recognized the reason was because of a faulty analysis of antitrust injury and causal connection between the violation and injury, and stated "[w]e have no difficulty in reaffirming our former judgment upon the record before us." *Indus. Inv. Dev. Corp. v. Mitsui & Co.*, 704 F.2d 785, 786 (5th Cir. 1983) ("*Mitsui II*"). Subsequent Fifth Circuit decisions have acknowledged that *Mitsui* remains good law, and have distinguished the applicability of *forum non conveniens* precisely based on the type of federal statute giving rise to the claims in suit. *See Kempe v. Ocean Drilling & Expl.*, 876 F.2d 1138, 1145 (5th Cir. 1989) (holding *forum non conveniens* doctrine is applicable to claims brought under the Racketeer Influenced and Corrupt Organizations (RICO) Act because RICO claims have common law counterparts, unlike the antitrust claims in *Mitsui*); *see also Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 829-30 (5th Cir. 1993) (holding *forum non conveniens* dismissal is applicable to claims brought under the Bankruptcy Code and distinguishing the result from *Mitsui*).

Contrary to Volkswagen's assertions, *In re Air Crash Disaster Near New Orleans* was not a Jones Act decision, and its statement that *forum non conveniens* applies in all cases was mere *dicta*. 821 F.2d 1147, 1163 n.25 (5th Cir. 1987) (*en banc*) *vacated on other grounds by* 490 U.S. 1032; *id.*at 1179 (Garza, J. concurring in part and dissenting in part); *id.* at 1163, n.25, 1180 (Garwood, J. concurring in part and dissenting in part); *id.* (Higginbotham, J. concurring); *id.* (Johnson, J. concurring). While the Court is mindful of *B & B Hardware*, that case held that a TTAB finding

6

of likelihood of confusion in the process of registering a trademark has a preclusive effect on a likelihood of confusion analysis in a federal district court infringement suit. In addition, the Supreme Court, referring to the different likelihood of confusion factors between the two tribunals, stated "[m]inor variations in the application of what is in essence the same legal standard do not defeat preclusion." 575 U.S. at 154 (citation and quotation omitted). In contrast to the minor variations between the legal standards in *B & B Hardware*, the Fifth Circuit has effectively established a *per se* rule that antitrust cases cannot be dismissed based on *forum non conveniens*. *Mitsui & Co.*, 671 F.2d at 890-91. Therefore, *Mitsui* compels the conclusion that the legal standard used to assess the *forum non conveniens* issue in *Prevent I* and *Prevent II* is entirely *different* than it is in this proceeding. Consequently, neither the *forum non conveniens* dismissal from *Prevent I*, which was affirmed by the Sixth Circuit, nor the *forum non conveniens* dismissal from *Prevent II* has a preclusive effect on the claims before the Court.

    Separately, the *forum non conveniens* issue is different from the issue here because the newly alleged facts materially alter the considerations underlying the resolution in *Prevent I* and *Prevent II*. *Villar* 990 F.2d at 1498. Volkswagen recognizes multiple factual differences relative to the previous cases yet concludes that they are not significant enough to modify the analysis. Motion, Dkt. No. 20 at 20-21. The Court disagrees. Here, Prevent USA asserts that it is a Texas Corporation and maintains offices and warehousing in Marshall, Texas. FAC, Dkt. No. 4 at ¶ 40. Prevent USA also alleges that in an effort to expand its U.S. presence, it hired a Texas-based CEO and engaged in discussions with IAC to acquire its U.S. operations—including a facility in Arlington, Texas. *Id.* at ¶¶ 147–149. Further, Prevent USA asserts that Volkswagen interfered with Prevent USA's potential acquisition in Texas. For at least this additional independent reason, the *Prevent I* and *Prevent II* decisions cannot have a preclusive effect here.

Accordingly, the *forum non conveniens* dismissals from *Prevent I* and *Prevent II* do not bar Prevent USA from bringing this suit.

### 2. There is No Issue Preclusion as to the FTAIA

In *Prevent II*, the court held that the FTAIA barred the Prevent Group's antitrust claims because its alleged injuries arose from foreign, not domestic, conduct and effects. *Prevent II*, 2021 WL 5585917, at *15-17. Is Prevent USA now precluded from litigating this dispute because of the court's holding under the FTAIA in *Prevent II*? No.

To establish collateral estoppel, a party must show "(1) that the issue at stake [is] identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." *Rabo Agrifinance*, 583 F.3d at 353 (citation omitted). "[C]ollateral estoppel does not apply unless the facts and *legal standards used to assess those facts* are the same in both proceedings." *Blackwell*, 440 F.3d at 284 (emphasis in original) (citation omitted).

"The FTAIA states that the antitrust laws will not apply to non-import commerce with foreign nations unless the conduct at issue has a 'direct, substantial, and reasonably foreseeable effect' on domestic commerce and 'such effect gives rise to a claim under' the antitrust laws." *Den Norske Stats Oljeselskap As v. Heeremac Vof*, 241 F.3d 420, 421-22 (5th Cir. 2001) (citing 15 U.S.C. § 6a). In addition, "the plain language of the FTAIA precludes subject matter jurisdiction over claims by foreign plaintiffs against defendants where the situs of the injury is overseas and that injury arises from effects in a non-domestic market. *Id.* at 428.

Volkswagen argues that Prevent USA's claims here are essentially no different than its previous claims arising from foreign conduct, so the previous holding that the FTAIA barred the

suit in *Prevent II* now precludes this suit. Motion, Dkt. No. 20 at 17; Reply, Dkt. No. 27 at 10. Prevent USA responds that the allegations here are different factually than the complaint in *Prevent II*, which includes new allegations involving import commerce. Response, Dkt. No. 24 at 24 n.8, 25 n.10; Sur-reply, Dkt. No. 30 at 9.

Here, the facts are sufficiently different to those in *Prevent II* to avoid issue preclusion as to the FTAIA.[5] In addition to the new allegations involving import commerce, Prevent USA also alleges that Volkswagen blocked its acquisition of multiple "Target Companies" that manufacture and sell automotive components in the United States for incorporation into Volkswagen vehicles manufactured and sold in the United States. FAC, Dkt. No. 4, ¶ 161. These allegations were not included in *Prevent II*. *See Prevent II*, 2021 WL 5585917, at *16. Further, *Prevent II* involved Prevent DEV GmbH rather than Prevent USA and Volkswagen has not demonstrated Prevent USA "had the full and fair opportunity to litigate the issue in the previous lawsuit." *Rabo Agrifinance*, 583 F.3d at 353.

In sum, the Court finds that issue preclusion does not apply to bar Prevent USA's claims under the FTAIA.

### B. *Forum Non Conveniens*

Can this suit be properly dismissed under *forum non conveniens*? No.

In *Mitsui*, the Fifth Circuit held that "[t]he common law doctrine of *forum non conveniens* is inapplicable to suits brought under the United States antitrust laws." 671 F.2d at 890-91. As previously discussed, *Mitsui* remains binding precedent. Since this case was brought under U.S. antitrust laws, the Court cannot dismiss this case on the basis of *forum non conveniens*.

---

[5] Since the Court finds that the facts are sufficiently different, the Court need not address Prevent USA's assertion that the legal standards concerning the FTAIA between the Sixth Circuit and the Sixth Circuit are different. Sur-reply, Dkt. No. 30 at 9 n.9.

9

### C. FTAIA

Does the FTAIA bar Prevent USA's claims? No.

To determine whether anticompetitive conduct is subject to Sherman Act liability, a court must first determine whether "that conduct falls within the FTAIA's general rule excluding the Sherman Act's application," *i.e.*, does the "conduct involv[e] trade or commerce ... with foreign nations." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004). Then, a court must determine whether "the conduct nonetheless falls within a domestic-injury exception to the general rule, an exception that applies (and makes the Sherman Act nonetheless applicable) where the conduct (1) has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce, and (2) "such effect gives rise to a [Sherman Act] claim." *Id.* at 159 (quoting 15 U.S.C. §§ 6a(1)(A), (2)).

According to the Fifth Circuit, "[t]he FTAIA states that the antitrust laws will not apply to non-import commerce with foreign nations unless the conduct at issue has a 'direct, substantial, and reasonably foreseeable effect' on domestic commerce and 'such effect gives rise to a claim under' the antitrust laws." *Den Norske*, 241 F.3d at 421–22 (citing 15 U.S.C. § 6a). In addition, "the plain language of the FTAIA precludes subject matter jurisdiction over claims by foreign plaintiffs against defendants where the situs of the injury is overseas and that injury arises from effects in a non-domestic market." *Id.* at 428.

First, Volkswagen argues that the complaint alleges only conduct directed out of and targeted at foreign nations. Motion, Dkt. No. 20 at 27.

The Court disagrees. Volkswagen's argument appears to ignore the allegations in the complaint. Here, Prevent USA's antitrust claims do involve foreign conduct, but multiple allegations concern parties, conduct, and harm in the United States. *See* FAC, Dkt. No. 4 at ¶¶ 124-

157. In addition, Prevent USA alleges damages resulting from its exclusion from the U.S. market. *See id.* at ¶¶ 32, 40, 165. The allegations are also against both Volkswagen, AG and Volkswagen Group of America, Incorporated. Regardless of whether Prevent USA is considered a foreign plaintiff, the alleged "situs of the injury" is not overseas, as required to trigger the FTAIA.

As a separate matter, Prevent USA alleges that the conduct involves import commerce, FAC, Dkt. No. 4 at ¶¶ 133, 138, 146, 161, whereas the allegations in *Prevent II* did not. 2021 WL 5585917, at *16 (E.D. Mich. Nov. 30, 2021) (focusing on a boycott agreement involving two German and two Michigan companies while finding that Prevent DEV GmbH "does not allege that its seat covers were ever imported into the United States"). Volkswagen's argument that Prevent's allegation is at odds with *Empagran*, 542 U.S. at 169, relies on the assumption that the allegations here are no different than those in *Prevent II*, which is not correct.

Second, Volkswagen argues that Prevent USA's injury *preceded* the effect on domestic commerce, rather than giving *rise* to the injury. Motion, Dkt. No. 20 at 27. Therefore, according to Volkswagen, the causal chain goes the wrong way. *Id.*

Again, the Court disagrees. Here, Prevent USA alleges that it was excluded from the worldwide market of Volkswagen automotive component parts, which necessarily includes the U.S. market. FAC, Dkt. No. 4 at ¶¶ 2, 6-14, 138, 159, 161. Additionally, Prevent USA asserts that its exclusion from the U.S. market, which it contends is the domestic impact, caused injury in the form of lost profits. FAC, Dkt. No. 4 at ¶¶ 138, 161. Therefore, Prevent USA properly alleges that the effect on domestic commerce preceded and gave rise to the injury.

To conclude, the FTAIA does not bar Prevent USA's claims.

### D. Failure to State an Antitrust Claim

There are two disputes regarding Prevent USA's alleged failure to state a claim. First, does Prevent USA fail to adequately plead a federal antitrust claim? Second, does Prevent USA fail to adequately plead its state antitrust, tortious interference, and civil conspiracy claims?

1. <u>Prevent USA's Pleadings are Sufficient for A Federal Antritrust Claim</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing a motion to dismiss, the court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. To be legally sufficient, the complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id.* The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 257.

In the context of antitrust claims, injury exists when (i) the injury was of the type antitrust laws were intended to prevent and (ii) the injury "flows" or was caused by that which makes the defendant's conduct unlawful. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489

(1977). "[T]he antitrust laws do not require a plaintiff to establish a market-wide injury to competition as an element of standing." *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 305 (5th Cir. 1997) (citation omitted).

First, Volkswagen argues that Prevent USA fails to allege antitrust standing. Motion, Dkt. No. 20 at 28-31. Volkswagen asserts that Prevent USA's allegations (1) only include injury to itself, (2) are based on an increase in competition, and (3) it is not a proper plaintiff. *Id.*

The Court is not persuaded. Prevent USA alleges that Volkswagen maintains monopsony power in the market for Volkswagen automotive component parts based on its 100% market share and through its strategy of weakening suppliers so no one supplier can obtain significant bargaining power. FAC, Dkt. No. 4 at ¶¶ 2, 3, 15, 83, 87, 187. When allegations concern a monopsony, the antitrust plaintiffs are the sellers rather than purchasers. *See Mandeville Island Farms v. Am. Crystal Sugar Co.*, 334 U.S. 219, 235 (1948) ("It is clear that the agreement is the sort of combination condemned by the [Sherman] Act, even though the price-fixing was by purchasers, and the persons specially injured under the treble damages claim are sellers, not customers or competitors."). The complaint specifically alleges that Volkswagen excluded Prevent USA from the market for Volkswagen automotive component parts through various forms of anticompetitive conduct, including refusals to deal, FAC, Dkt. No. 4 at ¶¶ 14, 89, 100, exclusionary dealing, *id.* at ¶¶ 15, 105-112, and the orchestration of a group boycott, *id.* at ¶¶ 15, 113-157. Prevent USA further alleged that this conduct resulted in its exclusion from the market and caused injury in the form of lost profits. *Id.* ¶¶ 32, 138, 161.

Second, Volkswagen argues that Prevent USA does not plead market power in a properly defined market. Motion, Dkt. No. 20 at 31-34. Volkswagen asserts that Prevent USA's market definition is available in exceptional circumstances and requires pleading "lock in" effects and

"structural barriers." Reply, Dkt. No. 27 at 14 (citing *Domed Stadium Hotel, Inc.* v. *Holiday Inns*, 732 F.2d 480, 488 (5th Cir. 1984); *PSKS, Inc. v. Leegin Creative Leather Prod., Inc.*, 615 F.3d 412, 417-19 (5th Cir. 2010)).

Volkswagen's argument falls short. As an initial matter, the Court recognizes that the relevant market is a factual inquiry. *Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002). Even if the Court rejected Prevent USA's market definition, dismissal at this stage would be improper. *See Constr. Cost Data, LLC v. Gordian Grp., Inc.*, 2017 U.S. Dist. LEXIS 77481, at *35-37 (S.D. Tex. Apr. 24, 2017) (quoting *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107 (2d Cir. 2002)). Furthermore, Prevent USA asserts that due to the high cost for it switching between different manufacturers, substantial capital expenditures, and limitation information, automotive component suppliers like Prevent USA are "locked in" to selling to a particular OEM, such as Volkswagen. FAC, Dkt. No. 4 at ¶¶ 4, 50, 65, 69-70.

Third, Volkswagen argues that Prevent USA does not plead an unreasonable restraint of trade. Motion, Dkt. No. 20 at 34-36. Volkswagen asserts that Volkswagen exercised its lawful right to refuse to do business with the Prevent Group and Prevent USA's economic theory is nonsensical. *Id.*

Here, Prevent USA alleges that Volkswagen's refusal to deal with it was to maintain monopsony power in violation of the Sherman Act. FAC, Dkt. No. 4 at ¶¶ 14, 89, 100. Volkswagen seems to ignore Prevent USA's pleadings once again. *See id.* at ¶¶ 105-157 (describing Volkswagen's boycott efforts). Taken together, Prevent USA's allegations establish a plausible antitrust claim under the Sherman Act.

### 2. Prevent USA's Pleadings are Sufficient for Its State Antitrust, Tortious Interference, and Civil Conspiracy Claims

Does Prevent USA fail to adequately plead its state antitrust, tortious interference, or civil conspiracy claims? No.

Volkswagen argues that Prevent USA's state law claims are also inadequate because (1) the Texas Free Enterprise and Antitrust Act follows the same standards as the Sherman Act, (2) the tortious interference claim rests on the same conduct as its antitrust claim, and (3) Plaintiff fails to plead "unlawful, overt acts" required for its civil conspiracy claim. Motion, Dkt. No. 20 at 36-37.

First, Prevent USA adequately pleads its federal antitrust claim. Consequently, it adequately pleads its state law claim. *Abraham & Veneklasen* v. *Am. Quarter Horse Ass'n*, 776 F.3d 321, 325 n.1 (5th Cir. 2015) ("the Texas Free Enterprise and Antitrust Act utilizes the same standards as the Sherman Act for establishing a violation").

Second, Prevent USA adequately pleads its tortious interference claim. To establish tortious interference with prospective business relations requires demonstrating the following:

> (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 211 (5th Cir. 2020) (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

Here, Prevent USA sufficiently pleads each element of its tortious interference claim. *See* FAC, Dkt. No. 4 at ¶¶ 110-122, 114-123, 124-132 (first element); *see id.* at ¶¶ 102-109, 113-14, 116-19, 134-37 (second element); *see id.* at ¶¶ 144-45,151 (third element); *see id.* at ¶¶ 130, 138 (fourth element); *see also id.* at ¶¶ 191-198.

Third, Prevent USA adequately pleads its civil conspiracy claim. "The essential elements of civil conspiracy claim are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 404-05 (5th Cir. 2013) (citing *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex.1996)).

Here, Prevent USA sufficiently pleads each element of the civil conspiracy claim. *See* FAC, Dkt. No. 4 at ¶¶ 113-149 (first element); *see id.* at ¶¶ 105-112 (second element); *see id.* at ¶¶ 113-149 (third element); *see id.* at ¶¶ 113-149 (fourth element); *see id.* at ¶149 (fifth element); *see also id.* at ¶¶ 199-203.

Thus, Prevent USA's allegations establish plausible antitrust, tortious interference, and civil conspiracy claims under state law.

### E. Personal Jurisdiction

Does Prevent USA fail to establish that the Court has personal jurisdiction over Volkswagen AG? No.

A court can exercise personal jurisdiction over a defendant if the defendant has had minimum contacts with the forum and the maintenance of the suit in the forum will not offend traditional notions of fair play and substantial justice. *Asahi Metal Indus. v. Superior Court of Calif.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one

federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

In cases where a state is attempting to get extraterritorial jurisdiction over a defendant, the inquiry is whether the defendant has had minimum contacts with the state. *International Shoe Co. v. Washington,* 326 U.S. 310, 315, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1257 (5th Cir.1994) (citations omitted).

To survive a motion to dismiss, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999). This is a "low threshold" that requires the Court to "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 n.8 (5th Cir. 2000).

Volkswagen argues that the complaint fails to plead both general and specific personal jurisdiction over Volkswagen, AG. Motion, Dkt. No. 38-39. According to Volkswagen, the allegations merely discuss five instances in which Volkswagen, AG purportedly blocked The Prevent Group's acquisition of other suppliers, but those involve "German supplier (Grammer), a Polish supplier (Groclin), the Brazilian operations of a Michigan-headquartered supplier (Tower), a Slovenian supplier (TBP), and a Luxembourger supplier (IAC)." *Id.* at 39 (citing FAC, Dkt. No. 4 at ¶¶ 21, 114, 121, 139, 148).

Here, the complaint establishes a *prima facie* case that this Court has specific jurisdiction over Volkswagen, AG so an additional allegation of general jurisdiction is unnecessary. Even without the specific allegations directed at Texas, the Fifth Circuit recognizes that in the context of

the Clayton and Sherman Acts, courts may exercise personal jurisdiction over foreign defendants based on their minimum sufficient contacts with the United States. *Fontenot v. Mullins Mfg. Co.*, 85 F.3d 625 (5th Cir. 1996). Here, Prevent USA alleges that Volkswagen, AG engaged in anticompetitive and tortious conduct directed at Prevent USA, a Texas corporation. FAC, Dkt. No. 4 at ¶¶ 3, 17-18, 26-35, 101-112, 132-149; *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999) ("Even if the parties formed their relationship in Germany, however, a single act by Brandt directed toward Texas that gives rise to a cause of action by Wien Air can support a finding of minimum contacts."). In addition, Prevent USA alleges that Volkswagen's conduct had a direct, substantial, and reasonably foreseeable effect on United States commerce. FAC, Dkt. No. 4 at ¶ 137.

Resolving factual conflicts in Prevent USA's favor, its allegations sufficiently establish that the Court has personal jurisdiction over Volkswagen, AG.

### III. CONCLUSION

For the reasons above, **IT IS RECOMMENDED** that the Motion to Dismiss (Dkt. No. 20) be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

SIGNED this 22nd day of June, 2023.

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE