UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| Prevent U.S.A. Corporation,<br><br>   Plaintiff,<br><br>v.<br><br>Volkswagen AG; Volkswagen Group of America, Incorporated,<br><br>   Defendants. | No. 2:22-cv-00506-JRG-RSP |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................1

**RELEVANT FACTS** ............................................................................................................1

**ARGUMENT**........................................................................................................................2

I.     **Judge Payne Correctly Concluded That VW Cannot Invoke *Forum Non Conveniens*** ..............................................................................2

    A.     *Mitsui* Remains Good Law ..........................................................................2

    B.     VW's Request For Interlocutory Appeal Certification Is Baseless.........................................................................................................4

II.     **Judge Payne Correctly Concluded That Issue Preclusion Does Not Attach To VW's Venue Challenge** ...................................................5

III.     **Judge Payne Correctly Concluded That the FTAIA Is Inapplicable** .....................................................................................................6

    A.     *Prevent 2*'s FTAIA Ruling Has No Preclusive Effect ...............................6

    B.     The FTAIA Does Not Apply To Prevent's Claims ...................................8

IV.     **Judge Payne Correctly Concluded That Prevent's Antitrust Claims Are Well Pled**.............................................................................9

    A.     Prevent Has Antitrust Standing..................................................................9

    B.     Prevent Has Alleged A Restraint of Trade ..............................................10

    C.     Prevent Alleged A Cognizable Relevant Market.....................................11

V.     **Judge Payne Correctly Concluded That Prevent's State Law Claims Are Well Pled**..........................................................................12

VI.     **Judge Payne Correctly Concluded That The Court Has Personal Jurisdiction Over VWAG**................................................12

**CONCLUSION** ..................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Hensel Phelps Constr. Co.*,
 909 F.3d 723 (5th Cir. 2018) ...................................................................................................3

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*,
 148 F.3d 1080 (D.C. Cir. 1998) ...............................................................................................9

*Constr. Cost Data, LLC v. Gordian Grp., Inc.*,
 2017 U.S. Dist. LEXIS 77481 (S.D. Tex. Apr. 24, 2017) ......................................................11

*Den Norske Stats Oljeselskap As v. HeereMac VOF*,
 241 F.3d 420 (5th Cir. 2001) ...................................................................................................8

*Earl v. Boeing Co.*,
 2021 U.S. Dist. LEXIS 50844 (E.D. Tex. Mar. 18, 2021) ...................................................4, 5

*Fin. Acquisition Partners LP v. Blackwell*,
 440 F.3d 278 (5th Cir. 2006) ................................................................................................5, 7

*Gahagan v. United States Citizenship & Immigr. Servs.*,
 911 F.3d 298 (5th Cir. 2018) ...................................................................................................4

*Harkins Amusement Enter., Inc. v. Harry Nace Co.*,
 890 F.2d 181 (9th Cir. 1989) ...................................................................................................6

*Haynsworth v. Corporation*,
 121 F.3d 956 (5th Cir. 1997) ...................................................................................................4

*In re Air Crash Disaster Near New Orleans*,
 821 F.2d 1147 (5th Cir. 1987) (*en banc*), *vacated on other grounds by* 490 U.S. 1032 .......3, 4

*Indus. Investment Dev. Corp. v. Mitsui & Co.*,
 671 F.2d 876 (5th Cir. 1982), *vacated on other grounds by* 460 U.S. 1007 (1983) ........ passim

*Kempe v. Ocean Drilling*,
 876 F.2d 1138 (5th Cir. 1989) .................................................................................................4

*Kilgoar v. Colbert Cnty. Bd. of Ed.*,
 578 F.2d 1033 (5th Cir. 1978) .................................................................................................6

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
 83 F. Supp. 2d 781 (E.D. Tex. 2000) ......................................................................................6

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) .................................................................................................................3

*Prevent DEV GmbH v. Adient*
   PLC, 2021 U.S. Dist. LEXIS 229553 (E.D. Mich. Nov. 30, 2021) ................................. *passim*

*Prevent DEV GMBH v. Adient PLC*,
   2021 WL 5585917 (E.D. Mich. Nov. 30, 2021) ............................................................. *passim*

*Prevent USA Corp. v. Volkswagen AG*,
   17 F.4th 653 (6th Cir. 2021) ....................................................................................... 2, 8

*Pulse Network, L.L.C. v. Visa, Inc.*,
   30 F.4th 480 (5th Cir. 2022) ........................................................................................... 10

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ........................................................................................... 11

*Sanger Ins. Agency v. HUB Int'l., Ltd.*,
   802 F.3d 732 (5th Cir. 2015) ..................................................................................... 10, 12

*Spectators' Commc'n Network, Inc. v. Anheuser-Busch Inc.*,
   1998 U.S. Dist. LEXIS 19868 (N.D. Tex. Nov. 24, 1998), *rev'd on other grounds*,
   231 F.3d 1005 (5th Cir. 2000) ........................................................................................ 11

*Spectors' Commc'n Network Inc. v. Colonial Country Club*,
   253 F.3d 215 (5th Cir. 2001) .......................................................................................... 11

*TravelPass Grp., LLC v. Caesars Entm't Corp.*,
   2019 U.S. Dist. LEXIS 168618 (E.D. Tex. Aug. 29, 2019) ............................................. 8

*Vaughan v. Anderson Reg'l Med. Ctr.*,
   849 F.3d 588 (5th Cir. 2017) ........................................................................................... 3

*Wien Air Alaska, Inc. v. Brandt*,
   195 F.3d 208 (5th Cir. 1999) .......................................................................................... 12

## TABLE OF DEFINED TERMS

| Abbreviation | Term |
|---|---|
| AC | Amended Complaint |
| FTAIA | Foreign Trade Antitrust Improvements Act |
| IAC | International Automotive Components GmbH |
| *Mitsui* | *Indus. Investment Dev. Corp. v. Mitsui & Co.*, 671 F.2d 876, 890-91 (5th Cir. 1982), *vacated on other grounds by* 460 U.S. 1007 (1983) |
| MTD | Volkswagen's Motion to Dismiss |
| Objections or Obj. | VW's Objections to Magistrate Judge's Report and Recommendation (D.I. 49) |
| Prevent | Prevent U.S.A. Corporation |
| R&R | Magistrate Judge's Report and Recommendation (D.I. 43) |
| VW | Volkswagen AG and Volkswagen Group of America Inc. |
| VWAG | Volkswagen AG |
| VWUSA | Volkswagen Group of America Inc. |

\* Unless otherwise indicated, emphases herein were supplied by Prevent.

## INTRODUCTION

After ample briefing, a lengthy hearing, and post-hearing submissions, Judge Payne carefully analyzed Prevent's allegations in light of Fifth Circuit precedent and recommended that VW's MTD be denied. Predictably displeased, VW now asks the Court to reject the R&R. But none of VW's arguments passes muster. The Court should adopt the R&R and deny the MTD.

## RELEVANT FACTS

Prevent is the Texas-based subsidiary of a "network of companies . . . engaged in the worldwide supply of various automotive component parts." AC ¶ 41. VWAG is the ultimate parent of a group of companies that collectively comprise the second largest manufacturer of vehicles in the world. *Id.* ¶ 44. VW has monopsony power in the market for VW automotive component parts. *Id.* ¶ 60. Monopsony power exists when a buyer, like VW, rather than a seller, has power in the purchasing market sufficient to restrain competition, including the power to force its suppliers to do something they would not do in a competitive market. *Id.*

The AC alleges that, to punish Prevent for its efforts to obtain fair contractual terms from VW, VW orchestrated a worldwide boycott of Prevent's and its affiliates' business. *Id.* ¶ 90. Known within VW as "Project 1," the boycott aimed to—in VW's words—"destroy" and "demolish" Prevent. *Id.* ¶ 92. In late 2019, when it became clear that VW's efforts to eradicate Prevent had reached U.S. soil, two Prevent affiliates sued VW in Michigan federal court. *Prevent DEV GmbH v. Adient* PLC, 2021 U.S. Dist. LEXIS 229553 (E.D. Mich. Nov. 30, 2021) ("*Prevent 1*"). One year later, another Prevent affiliate filed a complaint in the same court against VWAG, its CEO, and two other companies that were instrumental in VW's boycott. *Prevent DEV GMBH v. Adient PLC*, 2021 WL 5585917 (E.D. Mich. Nov. 30, 2021) ("*Prevent 2*"). VW moved to dismiss both complaints on *forum non conveniens* ("FNC") grounds.

A key legal issue faced by the Michigan courts—and, in the *Prevent 1* appeal, the Sixth

Circuit—was the extent to which the FNC doctrine applies to antitrust claims. Relying on Fifth Circuit precedent, *i.e.*, *Mitsui*, Prevent argued that it did not. VW, in contrast, argued that *Mitsui* was "wrongly decided." *Prevent USA Corp., et al. v. Volkswagen AG, et al.*, No. 21-01379, D.I., 20, Brief of Defs.-Appellees at 26. After expressly registering disagreement with the Fifth Circuit,[1] the Michigan courts and the Sixth Circuit sided with VW.

The FNC dismissals of the Michigan litigations emboldened VW to double down on its efforts to destroy Prevent. In 2022, after previously relocating to Texas, Prevent sought to acquire IAC, a distressed manufacturer of VW auto parts. AC ¶ 28. IAC maintains a substantial presence in Arlington. *Id.* Prevent's negotiations to acquire IAC began on a no-name basis, were conducted in the U.S., and initially went well, with IAC expressing great interest in a Prevent tie-up. *Id.* But once IAC learned that the would-be acquirer was Prevent, the negotiations abruptly ended. *Id.* The only conceivable reason for this outcome is the VW-orchestrated boycott of Prevent. *Id.* Indeed, IAC is featured on a list of "problematic" suppliers VW developed as part of "Project 1." *Id.*

To stop VW's ongoing, U.S.-directed anticompetitive conduct, Prevent filed this action.

## ARGUMENT

**I.      Judge Payne Correctly Concluded That VW Cannot Invoke *Forum Non Conveniens***

    **A.      *Mitsui* Remains Good Law**

At the heart of the Objections is VW's assertion that *Mitsui*'s central holding has been overturned, eroded, and/or "cabined," and thus that Judge Payne erred when he concluded that "*Mitsui* remains specific, binding Fifth Circuit precedent establishing that [FNC] is simply inapplicable to suits brought under the [U.S.] antitrust laws." R&R at 6. VW is mistaken.

---

[1] *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 661 (6th Cir. 2021) ("*Prevent I Appeal*") ("*We are not persuaded* [by *Mitsui*]."); *Prevent 2*, 2021 U.S. Dist. LEXIS 229553, at *9 (noting that the Sixth Circuit had declined to follow *Mitsui*).

The most fundamental problem with VW's argument is that VW has not cited—because it cannot—a single Fifth Circuit or Supreme Court opinion that explicitly overrules, or even calls into question, *Mitsui*'s central holding. But, as Judge Payne correctly concluded, district courts within the Fifth Circuit are bound by Fifth Circuit precedent "absent an intervening change in law, such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit sitting] *en banc*." *Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017) (quotations omitted). Importantly, the Fifth Circuit cannot overrule or erode its precedent *implicitly*, as VW appears to suggest. Indeed, "one panel of [the Fifth Circuit] . . . may not overturn another panel's decision." *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 742 (5th Cir. 2018) (quotations omitted).

To bridge this fatal analytical gap, VW observes that, in an *en banc* decision that post-dates *Mitsui*,[2] the Fifth Circuit noted that FNC principles "apply in *all* cases regardless of their jurisdictional bases or subject matter." Obj. at 4. This fails for multiple, independent reasons. First, *Air Crash* never once mentions *Mitsui* and concerns a different issue—whether courts sitting in diversity should rely on federal law in evaluating FNC motions. Second, in the very sentence VW quotes from *Air Crash*, the Fifth Circuit notes that its holding relies on a Supreme Court opinion, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). *Air Crash*, 821 at 1163 ("[T]he principles enunciated in *Reyno* apply in *all* cases . . . ."). *Reyno*, however, <u>pre-dates</u> *Mitsui*, which the Fifth Circuit decided in 1982. What's more, *Mitsui* acknowledges *Reyno* and notes that its "holding is not inconsistent with [the Fifth Circuit panel's] analysis." *Mitsui*, 671 F.2d at 891 n.20. It makes no sense to argue, as VW does, that *Air Crash* overturned *Mitsui*—the panel that decided *Mitsui* was fully aware of *Reyno* and went out of its way to note agreement with *Reyno*. Third, VW fails

---

[2] *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1163 (5th Cir. 1987) (*en banc*), *vacated on other grounds by* 490 U.S. 1032.

to acknowledge that, after *Air Crash*, Fifth Circuit panels have continued to recognize *Mitsui*'s central holding as the law—and never once questioned that it means what it says. *See Kempe v. Ocean Drilling*, 876 F.2d 1138, 1142 (5th Cir. 1989); *Haynsworth v. Corporation*, 121 F.3d 956, 968 (5th Cir. 1997). Fourth, VW cannot explain why—if *Mitsui* were not the law within the Fifth Circuit—the Sixth Circuit failed to recognize as much in the *Prevent 1 Appeal*, instead opting to expressly reject *Mitsui*'s holding.[3]

### B. VW's Request For Interlocutory Appeal Certification Is Baseless

Unable to credibly contest that that *Mitsui* is binding precedent, VW asks the Court for an interlocutory appeal certification.[4] According to VW, this is warranted because (i) its FNC arguments present "a controlling question of law as to which there is substantial ground for difference of opinion;" and (ii) an interlocutory appeal may resolve this action. Obj. at 6. Not true.

First, "the threshold for establishing a substantial ground for difference of opinion is a high one." *Earl v. Boeing Co.*, 2021 U.S. Dist. LEXIS 50844, at *16 (E.D. Tex. Mar. 18, 2021). "Courts normally find substantial grounds for difference of opinion when (1) a trial court rules in a manner which appears contrary to the rulings of *all* Courts of Appeals [that] have reached the issue; (2)

---

[3] VW suggests that the Supreme Court overruled *Mitsui* in *Mitsubishi Motors Corp. v. Soler*, which recognizes that "the 'importance' of an antitrust remedy 'does not compel the conclusion that it may not be sought outside [a U.S.] court.'" Obj. at 4 (quoting 473 U.S. 614, 635 (1985)). But *Soler* has nothing to do with FNC; instead, it concerns the enforceability of a forum selection clause. And, in any event, "[f]or a Supreme Court decision to override a Fifth Circuit case, the decision *must unequivocally overrule prior precedent*; mere illumination . . . is insufficient." *Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (quotations omitted).

[4] VW prefaces its request for certification by stating that "in the 41 years since *Mitsui* was decided . . . no court in this Circuit has adopted the broad view that *Mitsui* should be applied to categorically prohibit [FNC] dismissals [in antitrust cases]." Obj. at 5. Not true. In 1989, the Fifth Circuit reaffirmed that *Mitsui* means what it says: "This court [in *Mitsui*] has found a similar exception to the general [FNC] rule to be appropriate in cases involving alleged violations of the United States antitrust laws." *Kempe*, 876 F.2d at 1142. Furthermore, in the 41 years since *Mitsui* was decided, no district court within the Fifth Circuit has dismissed an antitrust complaint based on FNC.

the circuits are in dispute on the question and the *court of appeals of the circuit has not spoken on the point*; (3) complicated questions arise under foreign law; or (4) novel and difficult questions of first impression are presented." *Id.* None of these circumstances are present here because, as Judge Payne found, *Mitsui* is "specific, binding Fifth Circuit precedent establishing that [FNC] is simply inapplicable [here]." R&R at 6. While VW does not like *Mitsui*, its holding is "straightforward, uncontested, and, until the Fifth Circuit or the Supreme Court instructs otherwise, uncontestable." *Earl*, 2021 U.S. Dist. LEXIS 50844, at *12. And while VW clearly hopes that it may be able to get the Fifth Circuit to revisit *Mitsui*, that is insufficient for certification. There simply is no "binding precedent" that authorizes certification based on "a reasonable-appellate-judge-might-reverse standard." *Id.* at *18.

*Second*, even if the Fifth Circuit overturned *Mitsui*, an interlocutory appeal will not terminate this litigation. As Prevent explained in its MTD briefing, this litigation does not rise and fall with *Mitsui*. D.I. 24 at 10-13. This is because VW staked its entire FNC argument on issue preclusion, and failed to present *any* facts to support a fresh FNC analysis, which the Court would need to conduct if *Mitsui* were overturned. Having concluded that *Mitsui* forecloses FNC, Judge Payne did not need to address Prevent's secondary arguments against dismissal. But the fact remains that an interlocutory appeal, even if successful, will not dispose of the FNC issue.

**II.     Judge Payne Correctly Concluded That Issue Preclusion Does Not Attach To VW's Venue Challenge**

In the Fifth Circuit, "collateral estoppel [issue preclusion] does not apply unless [i] the facts *and* [ii] legal standards used to assess those facts are the same in both proceedings." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 284 (5th Cir. 2006). Judge Payne correctly concluded that, because neither the facts nor the law are "the same" as in *Prevent 1* and *2*, issue preclusion does not foreclose proceeding in this venue. VW's contrary arguments are wrong.

- 5 -

First, issue preclusion does not attach because the "legal standards used to assess [the venue] facts" are expressly *not* "the same in both proceedings."[5] Indeed, the *Prevent 1* and *2* courts *expressly* used a <u>*different*</u> legal standard, which *expressly* departs from *Mitsui*. Second, issue preclusion does not attach because the facts at issue here[6] are different from those alleged in *Prevent 1* and *2*, as Judge Payne found. The law is clear that issue preclusion does not bar a complaint that alleges conduct that post-dates an earlier dismissal, even if it is similar to previously-alleged conduct.[7]

### III. Judge Payne Correctly Concluded That The FTAIA Is Inapplicable

#### A. *Prevent 2*'s FTAIA Ruling Has No Preclusive Effect

The *Prevent 2* court's FTAIA holding is irrelevant here. As Prevent explained in its in MTD briefing and during oral argument before Judge Payne, *Prevent 2* concerned vastly different allegations from this case. In short, the crux of Prevent's complaint here—that VW barred it from

---

[5] VW argues that, because "all federal courts apply the same general law of [FNC]," collateral estoppel applies. Obj. at 7 (cleaned up). This ignores that *Mitsui* uniquely carves out antitrust litigation from the reach of FNC.

[6] VW attempts to sweep under the rug factual developments that occurred in the years since *Prevent 1* and *2* were filed. But Prevent is not a "shell," as VW contends. Obj. at 7. And VW's recent anticompetitive acts directed to Prevent's attempts to acquire a business with substantial Texas operations are decidedly new conduct. Once the Court rules on the Objections, Prevent intends to amend the AC to eliminate any potential misunderstanding concerning Prevent's activities in Texas and the relevance of IAC's Texas plant to the parties' dispute.

[7] *See Kilgoar v. Colbert Cnty. Bd. of Ed.*, 578 F.2d 1033, 1035 (5th Cir. 1978) ("Subsequent conduct, even if it is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action."); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 794 (E.D. Tex. 2000) ("Although the facts that underlie [the plaintiff's] conspiracy claim in this case are similar to those in [an earlier-dismissed suit], they are not identical. [But] collateral estoppel only precludes the relitigation of identical issues of fact or law that were actually litigated. . . . [collateral estoppel will not apply]where the conspiracy claim being alleged differ[s] <u>*only slightly from the claim rejected in a previous suit because the second lawsuit asserted at least some additional facts and circumstances not asserted in the earlier case*</u>.") (citing *Harkins Amusement Enter., Inc. v. Harry Nace Co.*, 890 F.2d 181, 183 (9th Cir. 1989) ("It cannot be emphasized too strongly that the continuation of conduct under attack in a prior antitrust suit is generally held to give rise to a new cause of action. The defendants by winning *Harkins I* did not acquire immunity in perpetuity.") (internal quotations omitted)).

the U.S. market for VW component parts by blocking a series of acquisitions of U.S.-based companies—*was not at issue in Prevent 2*. *Compare* AC ¶¶ 124-149 *with* Complaint ¶¶ 101-110, *Prevent 2*, No. 20-cv-13137, D.I. 20-4. Because the facts at issue here are not even close to "identical" to those in *Prevent 2*, that case cannot have preclusive effect. *See Fin. Acquisition Partners*, 440 F.3d at 284.

Ignoring this fundamental issue, VW argues that *Prevent 2*'s FTAIA ruling applies here because: (i) the allegations regarding "import commerce" in *Prevent 2* are the same; (ii) Prevent is "effectively the same" as the foreign Prevent entity that asserted *Prevent 2*; and (iii) *Prevent 1* requires dismissal based on FTAIA grounds, even though neither the District Court nor the Sixth Circuit addressed VW's FTAIA arguments. Obj. at 8-9. None of this is true.

First, the allegations concerning import commence in *Prevent 2* and this action are *not* the same. Here, the AC alleges that the companies Prevent was blocked from acquiring engaged in both domestic sales (to VWUSA) as well as to VWAG for automobiles that were imported into the U.S. AC ¶¶ 138, 161. These allegations were not made in *Prevent 2*.

Second, VW's assertion that Prevent is merely a "shell" for the foreign Prevent entity that filed *Prevent 2* ignores Prevent's allegations. Namely, that Prevent is not a "shell" for its parent company, but "maintains offices and warehousing" in Texas, and is run by a "Texas-based Chief Executive Officer with experience in the automotive industry." AC ¶¶ 40, 147-149. Judge Payne correctly credited these allegations. R&R at 7.

*Third*, VW's reliance on *Prevent 1* fails because the *Prevent 1* courts *did not rule on VW's FTAIA arguments*. A non-existent holding cannot have any collateral estoppel effect.[8]

---

[8] Contrary to VW's implication, the Sixth Circuit did *not* hold that Prevent's claim involved only "foreign conduct that produces only anticompetitive harm abroad." Obj. at 9. The Sixth Circuit

### B. The FTAIA Does Not Apply To Prevent's Claims

VW argues that the FTAIA bars Prevent's claims because Judge Payne misinterpreted the Fifth Circuit's standard for application of that statute under *Den Norske Stats Oljeselskap As v. HeereMac VOF*, 241 F.3d 420 (5th Cir. 2001). Obj. at 9. In short, VW argues that, where a complaint involves *some* foreign conduct, the FTAIA prohibits antitrust claims unless the alleged injury arises from anticompetitive effects on U.S. commerce. *Id.* This fails for two reasons.

First, it ignores the clear holding of *Den Norske*, which states that "the plain language of the FTAIA precludes subject matter jurisdiction over claims by foreign plaintiffs against defendants [i] where the situs of the injury is overseas *and* [ii] that injury arises from effects in a non-domestic market." *Den Norske*, 241 F.3d at 428. Thus, where, as here, the "situs" of an injury is *domestic*, the second prong of the test is inapplicable. This makes sense. By definition, antitrust injury must arise from anticompetitive effects in a relevant market. *See TravelPass Grp., LLC v. Caesars Entm't Corp.*, 2019 U.S. Dist. LEXIS 168618, at *63 (E.D. Tex. Aug. 29, 2019) ("An antitrust injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by [it].") (cleaned up). Domestic antitrust injury necessarily flows from anticompetitive effects in *the same* domestic market, and that is enough to overcome the FTAIA.

Second, even under VW's (incorrect) reading of *Dens Norske*, Prevent's allegations

---

actually found that Prevent's claims concerned both European *and* American injury, and that "[a]s between a Germany-based antitrust lawsuit and an American one, it appears that the German one would reach *more* conduct and more injuries." 17 F.4th at 659. The court then noted that, in general, "a Sherman Act claim . . . would not reach foreign conduct that produces only anticompetitive harm abroad." *Id.* Nor did the Sixth Circuit hold that Prevent failed to "show[] a meaningful connection between the alleged injury and the United States." Obj. at 9. Instead, the court only expressed skepticism that Prevent's allegations concerning its thwarted acquisition of Tower International's Brazilian subsidiary resulted in domestic injury. *Prevent 1 Appeal*, 17 F.4th at 660. Beyond the fact that this statement is *dicta* and not a holding, it is irrelevant given Prevent's additional allegations of domestic impact in this case.

suffice. Prevent pled that its injury (lost profits) was caused by the anticompetitive effect on the U.S. market, *i.e.*, its exclusion from that market. AC ¶¶ 138, 161. VW only objects to this finding on the grounds Prevent is effectively acting on behalf of its affiliates, and thus the blocked acquisitions of U.S.-based companies supposedly reflect foreign injury. Obj. at 10. This is incorrect and irrelevant. Even putting aside that VW is mischaracterizing Prevent's allegations, as Judge Payne noted, foreign plaintiffs may suffer domestic injury. R&R at 11. So even if the "real party in interest" was a German company, its exclusion from the *U.S. market* still reflects a domestic injury.[9] *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1086 (D.C. Cir. 1998) (holding that the FTAIA did not bar foreign plaintiff from asserting claim for monopolization of a Caribbean radio advertising market because that market included Puerto Rico and the U.S. Virgin Islands).[10]

### IV. Judge Payne Correctly Concluded That Prevent's Antitrust Claims Are Well Pled

VW objects to Judge Payne's finding that Prevent adequately stated antitrust claims on the basis that (i) Prevent did not allege antitrust standing because, according to VW, its injury arises from "increased competition;" and (ii) Prevent did not sufficiently allege a restraint to trade because its refusal to deal was allegedly "legitimate." Obj. at 10-11. Judge Payne rightly rejected both of these arguments because they "ignore Prevent USA's pleadings[.]" R&R at 14.

#### A. Prevent Has Antitrust Standing

As set forth in Prevent's MTD briefing, Prevent's injury does not arise from an increase in

---

[9] VW's argument that Prevent does not sufficiently allege conduct attributable to VWUSA is also incorrect, as the conduct in the AC ascribed to "Volkswagen" (defined as both VWAG and VWUSA) applies to both entities, not only VWAG. *See* MTD Opp. at 13 n.7.

[10] VW's argument that Prevent's claims do not fit within the import commerce exception of the FTAIA in light of the ruling in *Prevent 2* is wrong. As noted above, the import commerce allegations in the AC are not the same as in *Prevent 2*.

competition, it arises from being *excluded* from the market—a de facto *decrease* in competition and "textbook antitrust injury." *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 491 (5th Cir. 2022); *see also Sanger Ins. Agency v. HUB Int'l., Ltd.*, 802 F.3d 732, 738 (5th Cir. 2015) (finding that antitrust standing exists where nascent competitor was excluded from the market).[11]

### B. Prevent Has Alleged A Restraint of Trade

VW once again attempts to recast the litany of anticompetitive conduct Prevent alleges into a simple refusal to deal. As Judge Payne recognized, however, "[t]he [AC] specifically alleges that VW excluded Prevent USA from the market for VW automotive component parts through various forms of anticompetitive conduct, including refusals to deal . . . and the orchestration of a group boycott." R&R at 13 (citing numerous AC paragraphs).

After ignoring these allegations in its MTD briefing, VW now asserts that exclusive dealing allegations fail because Prevent "does not allege that it was required to sell automotive parts to VWAG on an exclusive basis," and that there can be no group boycott because Prevent does not allege that it was a competitor of VW. Obj. at 11. These arguments miss the point, misstate the law, or both. Prevent's exclusive dealing claim consists of allegations that VW entered into exclusive dealings with *other* parts suppliers, forcing them to agree not to transact business with Prevent if they hoped to sell parts to VW. AC ¶¶ 15, 105-112.[12] Furthermore, Prevent need not be a competitor of VW to allege a group boycott. Indeed, vertical group boycotts, in which "two or more firms agree not to deal with a firm with which they are in a vertical relationship" are well

---

[11] Moreover, Prevent pled that its exclusion from the market allowed VW to further its monopsony power by maintaining its outsized bargaining power over its suppliers. AC ¶¶ 4, 15, 163-68. Thus, Prevent's entry into the market, through acquisition or otherwise, would have led to a decrease in VW's monopsony power and a more competitive market as a whole.

[12] Contrary to VW's assertions, Prevent did plead substantial foreclosure from the market, and in particular, the submarket for VW seat covers. AC ¶¶ 38, 109, 182, 189.

recognized in the Fifth Circuit. *See Spectators' Commc'n Network, Inc. v. Anheuser-Busch Inc.*, 1998 U.S. Dist. LEXIS 19868, at *39-40 (N.D. Tex. Nov. 24, 1998), *rev'd on other grounds*, 231 F.3d 1005 (5th Cir. 2000).[13]

Finally, even if Prevent asserted only a refusal to deal under the so-called "essential facilities" doctrine—which Prevent does not—this would be sufficient, as Prevent alleged both (i) a prior course of dealing with Prevent affiliates (AC ¶¶ 78-83); and (ii) a sacrifice of short term profits. AC ¶ 103 (alleging that the cost of replacing Prevent Group would cost VW "roughly 200 million euros."); *see also id.* ¶¶ 22, 106, 163.

### C. Prevent Alleged A Cognizable Relevant Market

VW does not deny that relevant market is virtually always a question of fact,[14] nor that single brand markets are cognizable. Obj. at 11. Instead, VW argues only that Prevent insufficiently plead "lock in" effects because Prevent "is not even a participant" in that market. *Id.* This is nonsensical. Whether Prevent actually competes in a given market is irrelevant to whether such a market exists or is cognizable as a matter of economics. In any event, as a *potential* supplier of VW parts, Prevent is properly considered as a participant in the relevant market, rendering VW's argument moot. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995) ("[A] relevant market includes those sellers who have the actual or *potential* ability to compete.").

---

[13] VW cites *Spectors' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215 (5th Cir. 2001), for the proposition that a horizontal relationship is required for a group boycott. Obj. at 11. Not so. The Fifth Circuit held only that, to constitute a *per se* violation, a group boycott must include horizontal competitors. *Id.* at 223. But the Fifth Circuit ultimately remanded to assess whether there was "evidence of a *vertical* boycott constituting an unreasonable restraint of trade under the rule of reason." *Id.* at 225.

[14] *Constr. Cost Data, LLC v. Gordian Grp., Inc.*, 2017 U.S. Dist. LEXIS 77481, at *34 (S.D. Tex. Apr. 24, 2017) ("[B]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant market."). VW also does not address Judge Payne's finding that a relevant market definition is not a necessary component of a monopolization claim. R&R at 14 (citing *Constr. Cost Data*, 2017 U.S. Dist. LEXIS 77481, at *35-37).

### V. Judge Payne Correctly Concluded That Prevent's State Law Claims Are Well Pled

VW argues that Prevent failed to plead its state law claims of tortious interference and conspiracy because the R&R purportedly does not cite to allegations that reflect "independently unlawful acts . . . intentionality . . . [or] any conspiracy to achieve an unlawful objective." Obj. at 12. This is incorrect. To begin, if Prevent's antitrust claims are not dismissed, the anticompetitive conduct that supports those claims is sufficient to support Prevent's non-antitrust claims.[15] But even if the antitrust claims were dismissed, the R&R cites to dozens of paragraphs in the AC that allege precisely how VW used threats and deception (independently wrongful conduct) to intentionally and unlawfully interfere with Prevent's business relations. *See, e.g.*, AC ¶¶ 113-149.

### VI. Judge Payne Correctly Concluded That The Court Has Personal Jurisdiction Over VWAG

VW objects to Judge Payne's finding that this Court has personal jurisdiction over VWAG because Prevent supposedly only alleged VWAG's conduct was directed at the Prevent Group, located in Germany. Obj. at 12. This is false. The AC specifically alleged that VWAG engaged in conduct directed at Prevent specifically, and that conduct occurred in Texas. *See, e.g.*, AC ¶¶ 147-149. This is more than sufficient to establish specific jurisdiction. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).

### **CONCLUSION**

For the foregoing reasons, Prevent requests that the Court adopt the R&R and deny VW's motion to dismiss in full.

---

[15] *See Sanger Ins. Agency*, 802 F.3d at 748–49 ("[T]he merits of [plaintiff's] antitrust claim—the sole 'tortious or unlawful act' alleged—will ultimately determine whether it also has an actionable tortious interference claim.").

Dated: July 28, 2023

Respectfully submitted,

*s/ Samuel F. Baxter*
Samuel F. Baxter
sbaxter@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
Fax: (903) 923-9099

Radu A. Lelutiu
rlelutiu@mckoolsmith.com
James Hartmann Smith
jsmith@mckoolsmith.com
Melissa Cabrera
mcabrera@mckoolsmith.com
MCKOOL SMITH P.C.
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York 10001
(212) 402-9400
Fax: (212) 402-9444

***ATTORNEYS FOR PLAINTIFF PREVENT U.S.A. CORPORATION***

- 14 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 28, 2023 to counsel of record via the Court's ECF System.

*/s/ Samuel F. Baxter*
Samuel F. Baxter
