# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

```
────────────────────────────────  x
PREVENT U.S.A. CORPORATION,        :
                                   :   No. 2:22-cv-00506-JRG-RSP
        Plaintiff,                 :
                                   :   Honorable Rodney Gilstrap
v.                                 :   Chief District Court Judge
                                   :
VOLKSWAGEN AG; VOLKSWAGEN GROUP OF :   Honorable Roy S. Payne
AMERICA, INC.,                     :   Magistrate Judge
                                   :
        Defendants.                :
────────────────────────────────  x
```

## DEFENDANTS' RENEWED MOTION
## <u>TO DISMISS THE AMENDED COMPLAINT</u>

Michael Smith                            Sharon L. Nelles (admitted *pro hac vice*)
State Bar No. 18650410                   Steven L. Holley (admitted *pro hac vice*)
SCHEEF & STONE, LLP                      Suhana S. Han (admitted *pro hac vice*)
113 East Austin Street                   Leonid Traps (admitted *pro hac vice*)
Marshall, Texas 75670                    Jessica H. Goldman (admitted *pro hac vice*)
Tel: (903) 938-8900                      SULLIVAN & CROMWELL LLP
michael.smith@solidcounsel.com           125 Broad Street
                                         New York, New York 10004
                                         Tel: (212) 558-4000
                                         nelless@sullcrom.com
                                         holleys@sullcrom.com
                                         hans@sullcrom.com
                                         trapsl@sullcrom.com
                                         goldmanj@sullcrom.com

*Counsel for Defendants*

December 18, 2023

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF ISSUE PRESENTED............................................................................3

BACKGROUND ................................................................................................................4

    A.    "The First Chapter":  Prevent Group Litigates Related Claims Against VWAG In Germany.............................................................................................4

    B.    "The Second Chapter":  Prevent Group's Cases In Michigan Federal Courts Are Dismissed On The Basis Of *Forum Non Conveniens*..........................5

    C.    "The Third Chapter":  Prevent Group Tries Its Claims Again In Texas. ...............7

        1.    The First Amended Complaint and Motion to Dismiss .............................7

        2.    The Second Amended Complaint and Discovery .......................................9

        3.    The Writ of Mandamus ..........................................................................12

ARGUMENT ...................................................................................................................13

I.    THIS CASE SHOULD BE DISMISSED ON THE BASIS OF *FORUM NON CONVENIENS*. ....................................................................................................13

    A.    This Court Properly Considers *Forum Non Conveniens* Based On The Current Status Of The Case. .....................................................................13

    B.    The *Forum Non Conveniens* Factors All Strongly Favor Dismissal. ...................15

        1.    Germany Is an Adequate Alternative Forum. .............................................15

        2.    Private and Public Interest Factors Strongly Favor a German Forum......................................................................................................17

        3.    Plaintiff's Choice of Forum Deserves No Deference. ...............................20

II.    THIS CASE SHOULD ALSO BE DISMISSED FOR THE OTHER REASONS RAISED IN DEFEDANTS' PRIOR MOTION TO DISMISS. ........................................21

CONCLUSION.................................................................................................................22

# TABLE OF AUTHORITIES

*Page(s)*

*In re Air Crash Disaster Near New Orleans*,
   821 F.2d 1147 (5th Cir. 1987) (*en banc*), *vacated on other grounds*, 490 U.S.
   1032 (1989) ........................................................................................................................14

*Alpine View Co.* v. *Atlas Copco AB*,
   205 F.3d 208 (5th Cir. 2000) ...........................................................................................15, 20

*Anderson Tully Lumber Co.* v. *International Forest Products., S.r.L*,
   306 F. App'x 858 (5th Cir. 2009) ..........................................................................................20

*Baumgart* v. *Fairchild Aircraft Corp.*,
   1991 WL 487242 (W.D. Tex. Sept. 30, 1991), *aff'd*, 981 F.2d 824 (5th Cir.
   1993) .............................................................................................................................17, 18, 19

*BBC Chartering & Logistic GmbH* v. *Siemens Wind Power A/S*,
   2008 WL 155048 (S.D. Tex. Jan. 15, 2008).............................................................................19

*DTEX, LLC* v. *BBVA Bancomer, S.A.*,
   508 F.3d 785 (5th Cir. 2007) .....................................................................................15, 17, 19

*Empresa Lineas Maritimas Argentinas, S.A.* v. *Schichau-Unterweser, A.G.*,
   955 F.2d 368 (5th Cir. 1992) ...................................................................................................14

*Industrial Investment Development Corp.* v. *Mitsui & Co.*,
   671 F.2d 876 (5th Cir. 1982), *vacated*, 460 U.S. 1007 (1983) .............................7, 8, 9, 12, 13

*Innovation First International, Inc.* v. *Zuru, Inc.*,
   513 F. App'x 386 (5th Cir. 2013) ............................................................................................17

*Iragorri* v. *United Technologies Corp.*,
   274 F.3d 65 (2d Cir. 2001).......................................................................................................20

*Ney* v. *3i Group, P.L.C.*,
   2023 WL 6121774 (5th Cir. Sept. 19, 2023) ..........................................................................13

*O'Keefe* v. *Noble Drilling Corp.*,
   347 F. App'x 27 (5th Cir. 2009) ...............................................................................15, 17, 19

*Piper Aircraft Co.* v. *Reyno*,
   454 U.S. 235 (1981)...................................................................................................15, 20

*Prevent DEV GmbH* v. *Adient PLC*,
   2021 WL 5585917 (E.D. Mich. Nov. 30, 2021)....................................................................6, 18

## TABLE OF AUTHORITIES
### (cont.)

*Page(s)*

*Prevent USA Corp.* v. *Volkswagen AG*,
    17 F.4th 653 (6th Cir. 2021) ...................................................................................3, 5, 6, 18, 20

*Prevent USA Corp.* v. *Volkswagen AG*,
    2021 WL 1087661 (E.D. Mich. Mar. 22, 2021) ....................................................4, 5, 16, 18, 20

*Quintero* v. *Klaveness Ship Lines*,
    914 F.2d 717 (5th Cir. 1990) ..................................................................................................16

*Ranza* v. *Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ................................................................................................20

*Sinochem International Co.* v. *Malaysia International Shipping Corp.*,
    549 U.S. 422 (2007) ................................................................................................................16

*Syndicate 420 at Lloyd's London* v. *Early American Insurance Co.*,
    796 F.2d 821 (5th Cir. 1986) ..................................................................................................19

*Tjontveit* v. *Den Norske Bank ASA*,
    997 F. Supp. 799 (S.D. Tex. 1998) .........................................................................................20

*U.S.O. Corp.* v. *Mizuho Holding Co.*,
    547 F.3d 749 (7th Cir. 2008) ..................................................................................................20

*Wien Air Alaska Inc.* v. *Brandt*,
    2001 WL 1085140 (5th Cir. Sept. 5, 2001) ............................................................................15

## PRELIMINARY STATEMENT

This case belongs in Germany.  Prevent Group companies have been actively litigating claims like the ones asserted here in German courts for more than seven years, asserting the same alleged effort by Volkswagen AG ("VWAG") to put Prevent Group out of business.  Prevent Group and VWAG are both based in Germany, and the alleged plot against Prevent Group purportedly was conceived and largely carried out in Germany.  Any harm allegedly caused by VWAG's conduct was felt in Germany, where Prevent Group's owners are based.  And the vast majority of witnesses (who speak German) and documents (written in German) are located in Germany.  As three U.S. federal courts already have held, that makes this a textbook case for dismissal based on *forum non conveniens*.

Plaintiff has sought to avoid that fate by arguing that there is a categorical bar to applying the *forum non conveniens* doctrine in antitrust cases.  That argument was rejected first by the Sixth Circuit and now by the Fifth Circuit, which remanded the case to this Court "to make a new determination under a *forum non conveniens* framework."  (ECF No. 79 at 6.)  The determination should be straightforward because each of the three *forum non conveniens* factors strongly favors dismissing this case in favor of a German forum.  *First*, Germany is an adequate alternative forum because it has a developed body of antitrust and business tort law and Prevent Group is already actively litigating with VWAG there.  *Second*, private and public interest factors support litigating this case in Germany:  Most witnesses and documents are located there, and German courts have an interest in adjudicating disputes involving conduct that occurred largely in Germany.  *Third*, no deference is owed to plaintiff's choice of forum because Prevent U.S.A. Corporation was reincorporated in Texas by its German owners in April 2022 to bring this lawsuit.  Plaintiff has no real business in Texas and should not be rewarded for its blatant forum shopping.

Plaintiff assured this Court last June at the hearing on defendants' motion to dismiss that its claims rest on "U.S.-based conduct" and that it has not "alleged anything happening in Europe between the parties." (Nelles Decl. Ex. 1 at 48:1, 53:10–11.)   Subsequent events tell a very different story, one that underscores the fact that all three *forum non conveniens* factors support dismissal.  To begin:

- Of the 12 "most significant e-mail custodians in view of the pleaded claims and defenses" identified by plaintiff, **11 are employees of European Prevent Group companies that are based in Germany or Bosnia**.  (Nelles Decl. Ex. 2 at 1–3.)

- Of the 12 "most significant" e-mail custodians proposed by defendants, 11 are European current or former employees of VWAG, and plaintiff actually suggested the addition of three more, for a total of **14 out of 15 European VWAG custodians**.  (Nelles Decl. Ex. 3 at 1–2, Ex. 4 at 1–2.)

- In opposing defendants' efforts to put reasonable limits on discovery, it is plaintiff's express position that this case is ***not*** "**limited to conduct that occurred in the United States**," and that "Volkswagen's relationship with both Prevent USA, as well as its history of anticompetitive **conduct directed at other entities in the Prevent Group, goes to the core of this case**."  (Nelles Decl. Ex. 5 at 2 n.1, 5 (emphasis added).)

Further, when this Court pressed plaintiff at the motion to dismiss hearing as to why this case should go forward in Texas when Prevent Group's two earlier and essentially identical cases had been dismissed by Michigan federal courts in favor of Germany, plaintiff could identify in response only its allegations about its purported attempt to acquire a Luxembourg-headquartered automotive parts supplier called IAC.  It bears repeating that those allegations about IAC were the only ones not cut and pasted from the earlier complaints.  (*See* Nelles Decl. Ex. 1 at 44:19–48:5, 51:20–52:9.)  Those allegations have now been entirely undermined by plaintiff's own third-party discovery:  An IAC executive has sworn under oath that IAC **has no documents to support the allegation that VWAG prevented Prevent Group from acquiring IAC**, and that, to the "**best of [his] knowledge and belief, IAC has no such agreement**" with defendants.  (Nelles Decl. Exs. 6, 7.)

There is the added problem that it has become increasingly clear that plaintiff has no real business in Texas—confirming the Sixth Circuit's conclusion that Prevent USA is a "shell company" that functions as a "scouting party" for Prevent Group in Europe. *Prevent USA Corp.* v. *Volkswagen AG*, 17 F.4th 653, 657, 661 (6th Cir. 2021) ("*Prevent I Appeal*"). The extent of plaintiff's presence here consists of ███████████████████████████ ██████ (Nelles Decl. Ex. 8) and █████████████████████████████████ a local patent lawyer who has no apparent connection to the automotive parts business and does not list plaintiff among the many companies with which he is associated (Nelles Decl. Exs. 9, 10). Plaintiff does not claim to be manufacturing or selling automotive parts to anyone or even preparing to do so, instead asserting that it "is in the process of developing an assembly and service facility in Marshall to retrofit Ford trucks and other vehicles with campers." (ECF No. 66 ¶ 42.) Of course, a plan to retrofit Ford trucks with campers has nothing to do with the alleged monopsony in parts for Volkswagen vehicles that underpins plaintiff's claims.

This litigation has no meaningful link to Texas, and the three *forum non conveniens* factors all support dismissing this case in favor of a German forum. That was apparent based on the record that existed in June 2023, and plaintiff's own efforts to advance this case over the past six months should obviate any lingering doubt that this case belongs to Germany.

## STATEMENT OF ISSUE PRESENTED

Whether the Court should dismiss on the basis of *forum non conveniens* where (i) German courts provide an adequate alternative forum; (ii) private and public factors favor litigating this case in Germany; and (iii) plaintiff's choice of forum is entitled to no deference.

## BACKGROUND

**A.    "The First Chapter":  Prevent Group Litigates Related Claims Against VWAG In Germany.**

As this Court has recognized, this "is the third chapter of an ongoing litigation saga" between Prevent Group and VWAG.  (Report and Recommendation ("R&R"), ECF No. 43, at 1.) "The first chapter of litigation began in 2016 and remains ongoing in Germany." (*Id.*) It comprises a "long series of lawsuits in which Prevent Group companies have claimed in various German courts" that "VWAG and its subsidiaries are attempting to put them out of business and/or stop them from acquiring other parts suppliers." *Prevent USA Corp.* v. *Volkswagen AG*, 2021 WL 1087661, at *12 (E.D. Mich. Mar. 22, 2021) ("*Prevent I*").

A "detailed explanation of the ongoing German proceedings can be found in the *Prevent I*, *Prevent I Appeal*, and *Prevent II* cases" (R&R at 1 n.1), and defendants submit the Declaration of Carolin Marx to provide updated information about those proceedings.  As established in those materials, this case is tightly intertwined with the cases Prevent Group litigated and continues to litigate in Germany:

- In August 2016, a German court held that a "production standstill" by Prevent Group companies against VWAG was "unjustified" and "threaten[ed] to result in" significant "financial losses" for VWAG.  (Marx Decl. ¶ 5.)  **That explains why VWAG decided to stop doing business with Prevent Group companies, and undermines a central tenet of this case.**

- Beginning in 2018, German courts denied Prevent Group companies' efforts to enjoin VWAG's contract terminations, in part because Prevent Group "had already found more than ten new customers" and could sell its automotive parts to other vehicle manufacturers.  (*Id.* ¶¶ 10–12.)  **Those decisions undermine plaintiff's contention that high switching costs lock an automotive parts supplier into selling only to a specific vehicle manufacturer.**

- In November 2018, a German court held that VWAG did not have a "dominant" position in the purchase of automotive parts supplied by Prevent Group, and, even if it did, VWAG's conduct was a "legitimate," "good cause" "reaction to the illegal threat" of an "unreliable" supplier.  (*Id.* ¶¶ 7–9.)  Similarly, in February 2019, after a Prevent Group company asserted antitrust claims based on the same "Project 1" at issue in this

case, a German court held that VWAG's aim was not "to exploit" any "market power," but "to secure [its] operational processes." (*Id.* ¶¶ 14–16.) **These findings refute plaintiff's contention that VWAG engaged in anticompetitive conduct by ending its business relationship with Prevent Group.**

- In December 2019, an alleged assignee of Prevent Group claims (Andromeda) filed another complaint in Germany alleging that (i) VWAG "block[ed]" Prevent Group from acquiring other automotive parts suppliers in "South America, North America, [and] Europe"; (ii) VWAG did so to maintain a purported "monopsony"; and (iii) through "Project 1," VWAG sought "to prevent the takeover of suppliers by companies of the Prevent Group." (*Id.* ¶¶ 24–25.) Finally, in December 2021, Andromeda and a Prevent Group company filed yet another complaint in Germany against VWAG and again raised allegations regarding "Project 1," a purported strategy of "boycott and destruction," and interference with Prevent Group's "takeover candidates." (*Id.* ¶ 27.) **These allegations are almost carbon copies of those asserted in this case.**

**B.     "The Second Chapter":  Prevent Group's Cases In Michigan Federal Courts Are Dismissed On The Basis Of *Forum Non Conveniens*.**

*Prevent I.*  Apparently unhappy with the rulings Prevent Group was receiving in German courts, in November 2019, plaintiff and an affiliate asserted antitrust, tortious interference, and civil conspiracy claims against VWAG and its wholly owned subsidiary Volkswagen Group of America, Inc. ("VWGoA") in the Eastern District of Michigan.  In March 2021, the district court held that all *forum non conveniens* factors supported dismissal:  *first*, "Germany is an available and adequate forum" for Prevent USA's claims against both VWAG and VWGoA; *second*, private and public interest factors "weigh strongly in favor" of litigating in Germany, including because the "vast majority of the evidence" is there; and *third*, Prevent USA's choice of forum was entitled to "little, if any, deference" because Prevent USA is at best a "scouting party" for Prevent Group and the "decision to sue in the United States has nothing to do with convenience and everything to do with forum shopping."  *Prevent I*, 2021 WL 1087661, at *8–11.

*Prevent I Appeal.*  In November 2021, the Sixth Circuit affirmed, agreeing that "Germany is an adequate forum to hear this case," and holding that the district court "followed a well-travelled path" in dismissing the case on *forum non conveniens* grounds.  *Prevent I Appeal*,

17 F.4th at 659–60.  The Sixth Circuit "share[d] the district court's concern" over Prevent USA's failure to "show[] a meaningful connection between the alleged injury and the United States," and found "legitimate reasons for denying Prevent USA its choice of forum" because it was "merely a shell company" and "the real party in interest is the Prevent Group."  *Id.* at 657, 660–61.

   *Prevent II.*  In November 2020, a Prevent Group company called Prevent DEV GmbH filed a second action in the Eastern District of Michigan, which was assigned to a different judge. The complaint named as defendants VWAG, a VWAG executive, and suppliers Lear Corporation and Adient plc, alleging a "boycott" by VWAG, Lear, and Adient of the Prevent Group.

   In November 2021, the court dismissed the case on the basis of *forum non conveniens* and the Foreign Trade Antitrust Improvements Act.  Again, the court found all three *forum non conveniens* factors favored dismissal:  *first*, "Germany is an adequate alternative forum" even though Adient and Lear have their principal places of business in the United States, because German courts would nevertheless be able to exercise jurisdiction over all defendants and "would be able to provide an adequate remedy;" *second*, private and public interest factors favored litigating in Germany even though the plaintiff had alleged that some witnesses resided in the United States and some events occurred in this country, because the "suit's place of origin is Germany" and the majority of evidence would be in Germany; and *third*, Prevent DEV's choice of forum was entitled to no deference, not only because it was a foreign entity, but also because "Prevent Group's litigation history evidences foreign shopping," the complaint was "rife with references to the broader Prevent Group and its dispute with Volkswagen," and it was "disingenuous for Plaintiff to try to separate the instant action from its predecessors."  *Prevent DEV GmbH* v. *Adient PLC* ("*Prevent II*"), 2021 WL 5585917, at *3–15 (E.D. Mich. Nov. 30, 2021).

**C.**    **"The Third Chapter":  Prevent Group Tries Its Claims Again In Texas.**

*1.    The First Amended Complaint and Motion to Dismiss*

Rather than Prevent Group refiling its claims in Germany as directed, plaintiff filed this action on December 30, 2022, and its First Amended Complaint (ECF No. 4 ("FAC")) five days later.  It is an understatement to describe the complaint's similarities with *Prevent I* as striking: the FAC (i) is brought by the successor of one of the same plaintiffs; (ii) names the same defendants; (iii) recites the same allegations regarding Prevent Group's relationship with VWAG and the purported structure of the automotive parts business; (iv) recites verbatim the same allegations about Prevent Group's purported efforts to purchase the seven "Target Companies"— with the exception of a few allegations regarding IAC; (v) asserts the same antitrust and business tort claims; and (vi) references the exact same damages figure.  (*See* Nelles Decl. Ex. 11.)  The FAC then adds the same "boycott" allegations from *Prevent II*, essentially word for word.  (*Id.*)

Defendants moved to dismiss on multiple grounds, including that plaintiff's claims were precluded by the prior decisions of Michigan federal courts, and separately, that "preclusion notwithstanding," the case should be dismissed on the basis of *forum non conveniens* because all three factors favored a German forum.  (2/10 Motion to Dismiss ("MTD"), ECF No. 20, at 3, 10, 15–17.)  In support, defendants relied on, among other things, Prevent USA corporate records and three declarations also submitted in *Prevent I* regarding German law and the history of Prevent Group's litigations against VWAG in Germany.  (ECF No. 20-1, 20-2, 20-3, 20-8, 20-9.)

Plaintiff had two primary responses:  (i) "the rule in the Fifth Circuit is that dismissals based on *forum non conveniens* are inappropriate in antitrust actions," relying on *Industrial Investment Development Corp.* v. *Mitsui & Co.*, 671 F.2d 876 (5th Cir. 1982), *vacated*, 460 U.S. 1007 (1983); and (ii) "just months ago, Volkswagen blocked yet another attempted acquisition by Prevent—and this time the target company, IAC, maintains substantial operations in Arlington,

Texas." (3/17 MTD Response, ECF No. 24, at 1.)  Plaintiff similarly focused on IAC at the hearing

on June 8, arguing that a handful of new paragraphs in its complaint discussing IAC meant that

this case, unlike *Prevent I* and *Prevent II*, is focused on the United States, not Germany:

> THE COURT:  Point me to the paragraphs of your amended complaint –
> First Amended Complaint that you maintain are different from what was in
> what we're calling *Prevent I* and *Prevent II*.
>
> MR. LELUTIU:  Yes, Judge.  I think it's – it's Section E of the amended
> complaint.  It begins on Page 52.  It's Paragraph 147 through 1–149.  Again,
> these are long paragraphs.  But we say we tried to acquire this company that
> has a substantial presence in Texas. . . .
>
> THE COURT:  But what I'm hearing is that at least a significant part of the
> allegations are the same.
>
> MR. LELUTIU:  A significant part of the allegations occurred, yes, before
> the IAC acquisition, before Prevent was in Texas.  But, again, this is a
> continuing tort, and in our view, especially in the Fifth Circuit where *Mitsui*
> says you cannot apply *forum non conveniens* to antitrust claims since the
> claims are ongoing, and now there is impact in Texas, then [sic] have a right
> to be here. . . .
>
> THE COURT: No, I understand that your first line of defense on the
> collateral estoppel issue/issue preclusion is that the law is different.  **But all
> I've heard on the allegations being different is the three Paragraphs
> 147 to 149.  Is there anything else in the First Amended Complaint that
> you contend was not present in *Prevent I* and *II*?**
>
> MR. LELUTIU:  **I think that's the only thing that – with the exception
> of – you know, Prevent being a Texas corporation**, it is true that the
> addition – and frankly the reason why we're here is because they're doing
> – they're doing it again.  They had the option to stop.  They haven't stopped.
> And here we are again.

(Nelles Decl. Ex. 1 at 44:19–45:2, 47:10–19, 51:20–52:8 (emphasis added).)  Similarly, when

pressed about an allegation in the FAC that "Prevent Group brings this action," plaintiff assured

the Court that this case is not about Prevent Group in Germany, but about plaintiff in the United

States:

> THE COURT: Tell me about Paragraph 35 of your First Amended Complaint. As I understand it, Prevent USA is the sole Plaintiff. But Paragraph 35 says the Prevent Group brings this action.
>
> MR. LELUTIU: Prevent – I mean, Judge, it could – I don't know how this paragraph got here. You know, we are the Plaintiff. Obviously, if you look at the caption, there's only one Plaintiff. It's Prevent USA. And, again, in our view, this case concerns U.S. conduct. We haven't alleged anything happening in Europe between the parties before. It's about U.S. conduct. It's about U.S. injury. And, you know, there's only one Plaintiff, and that is a Texas corporation.

(*Id.* at 53:1–13.)

Based on the different legal standard in *Mitsui* and plaintiff's allegations regarding IAC, this Court recommended that the case not be dismissed on the basis on preclusion. (*See* R&R at 1–2 (emphasizing IAC allegations).) As to *forum non conveniens*, the Court stated that it "cannot dismiss this case" on that basis because of *Mitsui*. (*Id.* at 9.) The parties briefed objections to the R&R, in which plaintiff relied primarily on *Mitsui* and the allegations that it "sought to acquire IAC." (Response to Objections to R&R, ECF No. 56, at 2.) On August 3, Judge Gilstrap adopted this Court's recommendation.

### 2.    The Second Amended Complaint and Discovery

On August 16, plaintiff filed a Second Amended Complaint. (ECF No. 66 ("SAC").) The SAC makes just three changes. *First*, the SAC removes the statement raised by the Court at oral argument that "Prevent Group brings this action." (Nelles Decl. Ex. 12 ¶ 37.) *Second*, the SAC asserts that Prevent Group is interested in Texas because Tesla and Toyota have operations here, and that plaintiff "is in the process of developing an assembly and service facility in Marshall to retrofit Ford trucks and other vehicles with campers" (*id.* ¶ 42), allegations obviously in tension with plaintiff's assertion that "suppliers like Prevent are locked into selling to a single OEM, such as Volkswagen" (3/17 MTD Response at 22). *Third*, conspicuously, the SAC *removes* allegations that "the owner of IAC agreed to meet with a representative of the would-be acquirer to discuss an

offer for the acquisition of IAC," and that, "[i]n August 2022, the owner of IAC and Prevent USA's advisor discussed the potential acquisition and negotiations went well." (Nelles Decl. Ex. 12 ¶ 151.) The SAC replaces these allegations with an assertion that plaintiff's banker, Stifel Financial, had "conversations" with Gamut Capital, which supposedly "handled negotiations on behalf of IAC." (*Id.* ¶¶ 28–29.)

After the Court denied defendants' motion to dismiss and motion to stay discovery, discovery began. That process has confirmed—contrary to plaintiff's prior representations to the Court—that this case is very much about things "happening in Europe." (Nelles Decl. Ex. 1 at 53:10.) The true state of affairs became clearer with plaintiff's August 10 initial disclosures. (Nelles Decl. Ex. 13.) According to plaintiff, of the 13 individuals with discoverable information who have a current "Affiliation" with "Plaintiff," **12** are employees of European Prevent Group companies based in Europe, primarily Germany.

Then, pursuant to the October 17 E-Discovery Order, the parties also exchanged lists of their 12 "most significant e-mail custodians in view of the pleaded claims and defenses." (ECF No 76 § 8(a).) Here too, plaintiff confirmed that this case is unconnected in any meaningful way to the Eastern District of Texas; **11 of 12** of plaintiff's proposed e-mail custodians are employees of Prevent Group companies based in Europe, again primarily in Germany. (Nelles Decl. Ex. 2.) Moreover, 11 of 12 of defendants' proposed e-mail custodians are European current or former employees of VWAG. (Nelles Decl. Ex. 3.) And plaintiff requested **three more VWAG e-mail custodians**, making it **14 out of 15**. (Nelles Decl. Ex. 4.)

The sole plaintiff-affiliated person identified in its initial disclosures and proposed as an e-mail custodian who does not work for a European Prevent Group company is Alan Loudermilk. Mr. Loudermilk was named chief executive officer of Prevent USA ███████████████

████████████████████████████████████████████████████████

██████████  (Nelles Decl. Exs. 14, 15.)  Despite the "CEO" title, █████████████████

███████████████████████████████████  (Nelles Decl. Ex. 9.)  Mr. Loudermilk

owns ████████████████████████████████████████████████  the registered

address for nearly two dozen other companies also associated with Mr. Loudermilk.  (Nelles Decl.

Exs. 8, 16.)  Mr. Loudermilk's LinkedIn profile discloses that he is a patent lawyer, and none of

the six executive roles he lists mentions plaintiff.  (Nelles Decl. Ex. 10.)

Plaintiff's insistence that this case is focused on the United States is further contradicted

by its position as to the proper scope of discovery.  Defendants objected to certain of plaintiff's

discovery requests on the grounds that they had no connection to alleged efforts to block plaintiff's

acquisitions of U.S. automotive parts suppliers or purported boycotts of plaintiff by VWAG acting

in concert with Adient and Lear.  (Nelles Decl. Exs. 17, 18.)  In response, plaintiff claimed it was

entitled to discovery about automotive parts suppliers worldwide because it is "incorrect" to say

that "the scope of this litigation is limited to conduct that occurred in the United States."  (Nelles

Decl. Ex. 5 at 2 n.1.)  According to plaintiff, and contrary to the representations made to the Court

at the motion to dismiss hearing, VWAG's "**history of anticompetitive conduct directed at other

entities in the Prevent Group . . . goes to the core of this case**."  (*Id.* at 5 (emphasis added).)

Plaintiff also sent a subpoena to IAC seeking all documents "concerning or relating to

Prevent, including Prevent's potential acquisition of You" (Request 1) and all communications

"between You and Volkswagen" relating to that potential acquisition (Request 2).  (Nelles

Decl. Ex. 19 at 5.)  IAC filed a motion to quash in this Court, in which it stated that IAC "has

conducted a reasonable search of its records and found no such documents" that would be

responsive to Request 1; and "knows of no such Document or Communications between VW and

-11-

itself regarding Prevent" that would be responsive to Request 2.  (Nelles Decl. Ex. 20 at 4, 10.)  In support of the motion, Michael Qaqish, IAC's Chief Compliance Officer and Deputy General Counsel, submitted a sworn declaration stating:

> I have conducted a search of the computer used by the IAC chief executive officer and **found no reference to "Prevent."**  The Prevent First Amended Complaint and Second Amended Complaint claim that IAC has an agreement with Volkswagen that it would not let itself be acquired by Prevent.  **To the best of my knowledge and belief, IAC has no such agreement.**

(Nelles Decl. Ex. 6 (emphasis added).)  At a hearing on October 13, this Court ordered IAC to complete its search and produce any documents relating to Prevent Group or an effort by Prevent Group to acquire IAC.  (Nelles Decl. Ex. 21.)  IAC reported that "**[a]fter a diligent search, IAC has found no such responsive documents**."  (Nelles Decl. Ex. 7.)

Moreover, plaintiff's efforts to bolster its baseless allegations about IAC with information from Gamut Capital, an investor in IAC that plaintiff had labeled as IAC's owner, fared no better.  Mr. Qaqish's sworn declaration also states that, "[m]y understanding from Michael Kreger, principal at Gamut Capital, was that **the inquiry to purchase IAC by Prevent was never taken seriously by Gamut**."  (Nelles Decl. Ex. 6 ¶ 9 (emphasis added).)  Plaintiff subpoenaed Gamut Capital, which produced 32 documents as the "entirety" of its production.  (Nelles Decl. Ex. 22.)  The Gamut documents show that it had only an "informal introductory meeting" with bankers purporting to represent a "**European family office**."  (Nelles Decl. ¶¶ 24, 25 & Ex. 23.)  Not a single document mentions Volkswagen or suggests any effort by defendants to interfere with Prevent Group's supposed efforts to acquire IAC.  (Nelles Decl. ¶ 24.)

    3.    *The Writ of Mandamus*

While this discovery was in process, on November 21, the Fifth Circuit issued a writ of mandamus.  (ECF No. 79 ("Mandamus Order").)  The Fifth Circuit confirmed that *Mitsui* is not

good law, that "there are no exceptions to the *forum non conveniens* doctrine," and that "a single and uniform approach to the analysis and application of the *forum non conveniens* doctrine best serves litigants and the courts." (*Id.* at 4.)  With an apparent nod to Prevent Group's tactics, the Fifth Circuit stated that denying mandamus relief "could have the unintended consequences of encouraging forum shopping in this circuit by future foreign antitrust plaintiffs." (*Id.* at 5.)  The Fifth Circuit thus vacated the decision denying the motion to dismiss and remanded the case to this Court "to make a new determination under a *forum non conveniens* framework." (*Id.* at 6.)

Accordingly, since this Court first issued the R&R, two premises underlying the denial of defendants' motion to dismiss on the grounds of preclusion and *forum non conveniens* can no longer support litigation continuing in this court:  (i) *Mitsui* is not good law, and the law in this circuit with respect to dismissal of antitrust cases on *forum non conveniens* grounds is no different than in the Sixth Circuit (or any other); and (ii) it is demonstrably wrong that "Volkswagen blocked yet another attempted acquisition by Prevent—and this time the target company, IAC, maintains substantial operations in Arlington, Texas." (3/17 MTD Response at 1.)

## ARGUMENT

## I.    THIS CASE SHOULD BE DISMISSED ON THE BASIS OF *FORUM NON CONVENIENS.*

### A.    This Court Properly Considers *Forum Non Conveniens* Based On The Current Status Of The Case.

As a threshold matter, plaintiff has staked out the position that this Court must conduct a *forum non conveniens* analysis based on the record the parties presented during briefing earlier this year. (*See* Nelles Decl. Ex. 24.)  The argument is frivolous.

The Fifth Circuit has recognized that there is a broad scope of information that can be considered on a *forum non conveniens* motion, and "it is within a district court's discretion to consider matters outside the pleadings."  *Ney* v. *3i Group, P.L.C.*, 2023 WL 6121774, at *3

(5th Cir. Sept. 19, 2023).  Indeed, the Fifth Circuit has directed that a district court should consider the "status of the case at the time the motion is filed," "rather than the time of the action's commencement," given the "many factors that might bear on the granting or denial of the motion, e.g., discovery, stipulations, admissions, the joinder or dismissal of parties, which frequently develop or occur after the action commences."  *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1166 (5th Cir. 1987) (*en banc*), *vacated on other grounds*, 490 U.S. 1032 (1989). Accepting plaintiff's invitation to ignore what has happened over the last six months would be at odds with this precedent.[1]

Plaintiff also has indicated that it will argue, as it did in the Fifth Circuit, that defendants waived reliance on the *forum non conveniens* doctrine.  (Nelles Decl. Ex. 24.)  Plainly, the Fifth Circuit rejected that argument when it granted mandamus; otherwise, there would be no reason to remand to "make a new determination under a *forum non conveniens* framework."  (ECF No. 79 at 6.)  Regardless, there was no waiver:  defendants expressly relied on *forum non conveniens* as a basis for dismissal, "preclusion notwithstanding" (2/10 MTD at 3, 10, 14–17; 3/31 MTD Reply, ECF No. 27, at 4–5), and submitted evidence in support, and the Court addressed that argument separately (R&R at 3).[2]

---

[1] Because the Court will now consider whether to dismiss this action based on an updated record that goes beyond the pleadings—and because plaintiff's amendments to the FAC did not materially change the pleadings in any event, other than to highlight deficiencies in its allegations about IAC (*see supra* at 9–10)—the Court should dismiss regardless of whether it considers the FAC, the SAC, or both for purposes of this motion.

[2] To the extent plaintiff plans to repeat its argument that defendants had to submit certain affidavits in support of their motion, such a requirement has been rejected by the Fifth Circuit.  *See Empresa Lineas Maritimas Argentinas, S.A.* v. *Schichau-Unterweser, A.G.*, 955 F.2d 368, 371–72 (5th Cir. 1992) (rejecting "blanket rule requiring affidavit evidence").

**B.    The *Forum Non Conveniens* Factors All Strongly Favor Dismissal.**

In addressing *forum non conveniens*, "the district court must first determine whether an adequate alternative forum is available." *O'Keefe* v. *Noble Drilling Corp.*, 347 F. App'x 27, 31 (5th Cir. 2009).  "If an alternate forum that is both available and adequate exists, the court must next assess whether, considering relevant private interest and public interest factors, dismissal is warranted.  In addition to the balancing of relevant private interest factors, the court must give 'the relevant deference' to the plaintiff's choice of forum." *Alpine View Co.* v. *Atlas Copco AB*, 205 F.3d 208, 221–22 (5th Cir. 2000).  Here, all steps of the analysis strongly favor dismissal.

*1.    Germany Is an Adequate Alternative Forum.*

German courts are an adequate alternative forum here.  Critically, "'[a]dequacy' does not require that the alternative forum provide the same relief as an American court." *DTEX, LLC* v. *BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007).  Dismissal is appropriate even if the other country's courts will apply different "substantive and procedural law," as long as plaintiff can still obtain *some* form of relief. *Id.* at 796–97 (adopting district court decision dismissing case in favor of Mexican courts, even though they would apply different law and limit damages).

Although defendants bear the burden of persuasion as to *forum non conveniens* factors generally, the "law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *Id.* at 796; *see Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 254 n.22 (1981) (noting only "rare circumstances" in which "the other forum may not be an adequate alternative" because "the remedy offered by the other forum is clearly unsatisfactory").  German courts applying German analogs of American laws are routinely deemed to be an adequate alternative. *See Wien Air Alaska Inc.* v. *Brandt*,

2001 WL 1085140, at *1 (5th Cir. Sept. 5, 2001) (affirming dismissal of fraud case in favor of German forum).

Tellingly, plaintiff has not disputed that Germany is an adequate alternative forum for this case.[3]  That should come as no surprise given that Prevent Group companies have been litigating very similar claims against VWAG in Germany for years.  As the court in *Prevent I* observed, "the fact that Prevent Group companies have filed several lawsuits against VWAG and its subsidiaries in German courts for unfair competition and antitrust violations arising from their alleged execution of Project 1 is powerful evidence that plaintiffs themselves recognize Germany as an available and adequate forum for the litigation of such disputes."  *Prevent I*, 2021 WL 1087661, at *9; *see Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435–36 (2007) (that "proceedings to resolve the parties' dispute are underway" in another country renders that country particularly likely to be an available forum).

Were there any possible doubt on this score, the declarations submitted with this motion confirm that this case could be adjudicated in Germany.  Professor Wolfgang Wurmnest, whose declaration was credited in *Prevent I*, explains that German courts have jurisdiction over the parties here, and can apply a developed body of German and European antitrust and business tort law to adjudicate the issues in dispute.  (*See* Declaration of Wolfgang Wurmnest ¶¶ 9–12, 17, 23–27.)  To eliminate any doubt that a German court would have jurisdiction over both VWAG and VWGoA in this matter, VWGoA has submitted a declaration stating that it will not contest German jurisdiction.  (Declaration of Kevin Duke ¶ 3.)  *See Quintero* v. *Klaveness Ship Lines*, 914 F.2d

---

[3] *See* 4/14 MTD Sur-Reply, ECF No. 30, at 3 n.6 (noting defendants' argument that plaintiff did not dispute Germany was an adequate alternative forum, and responding only that, "even assuming Germany were an adequate alternative forum, that is not the end of the analysis").

717, 728 (5th Cir. 1990) ("Klaveness has already certified that it will submit to service of process and jurisdiction in the Philippines. Therefore, the Philippines is an available forum.").

### 2. Private and Public Interest Factors Strongly Favor a German Forum.

The private interest factors to be taken into account in deciding a *forum non conveniens* motion "relate primarily to the convenience of the litigants."  *Innovation First Int'l, Inc.* v. *Zuru, Inc.*, 513 F. App'x 386, 390–91 (5th Cir. 2013).  They include:

> (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of [the] premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive ... enforceability of judgment[; and whether] the plaintiff [has sought to] "vex," "harass," or "oppress" the defendant.

*DTEX*, 508 F.3d at 794 (all alterations and quotations in original).  Importantly, the inquiry is not whether the case has *any* connections to the chosen forum, but "where trial will best serve the convenience of the parties and the interests of justice." *O'Keefe*, 347 F. App'x at 31; *see Baumgart* v. *Fairchild Aircraft Corp.*, 1991 WL 487242, at *8 (W.D. Tex. Sept. 30, 1991) ("Although both" Germany and Texas "have contacts with this case, on balance, the Court finds that Germany is the focal point of this case."), *aff'd,* 981 F.2d 824 (5th Cir. 1993).

It is clear from the complaint that most of the evidence in this case will be in Germany. The complaint recites a litany of allegations about conduct occurring in Germany, asserts claims based on an alleged plot ("Project 1") conceived in Germany by German executives of a German company, and relies on translations of German documents.  Though plaintiff is nominally an American company, it alleges that it is a wholly owned subsidiary of a German company.  And federal courts in Michigan have already held that private interest factors favor litigating almost

identical claims in Germany.[4]  Plaintiff's new "information and belief" allegations regarding IAC do nothing to alter that conclusion:  the allegations have been shown to be baseless, and even if that were not the case, they do not change the predominantly German nexus of the case.[5]

Any doubt on this score has been eliminated by the positions plaintiff has taken in discovery.  Virtually all of the persons identified in plaintiff's initial disclosures and proposed as e-mail custodians are employees of European Prevent Group companies based primarily in Germany.  Moreover, plaintiff has explicitly stated that "conduct directed at other entities in the Prevent Group" is part of the "core of this case," and that it is "incorrect" to say that "the scope of this litigation is limited to conduct that occurred in the United States."  (Nelles Decl. Ex. 5 at 2.)[6]

It is not incumbent on defendants to establish that there are zero connections between plaintiff's claims and the United States.  The question is instead whether Germany is the "focal point" of the case.  *See, e.g.*, *Baumgart*, 1991 WL 487242, at *8 ("Germany is the focal point of this case" despite Texas contacts).  The few new IAC related allegations—even if well founded— would not change the fact that the overwhelming majority of witnesses are in Germany and the overwhelming majority of documents will be produced from the files of custodians in Germany,

---

[4] *Prevent I*, 2021 WL 1087661, at *10–11 ("Plainly, the vast bulk of the evidence in this case is in Germany"); *Prevent I Appeal*, 17 F.4th at 660 ("Prevent USA's allegations about the relevant presentations and spreadsheets, all directed at German executives, suggest that much of the evidence will be in German, and that the German courts will be able to access these documents and witnesses far more conveniently than American courts could."); *see Prevent II*, 2021 WL 5585917, at *6–7 (holding that "the private interests strongly favor litigation in Germany" and citing German documents and witnesses implicated in boycott allegations that are repeated here).

[5] Plaintiff's addition to the SAC that it is "in the process of developing an assembly and service facility in Marshall to retrofit Ford trucks and other vehicles with campers" (SAC ¶ 42) is both vague and irrelevant for purposes of *forum non conveniens* analysis, not least because it has nothing to do with the alleged market for Volkswagen automotive component parts.

[6] Given the broad, international scope of the discovery plaintiff is seeking, defendants are also seeking a stay of discovery until resolution of defendants' motion to dismiss.

many of which will have to be translated from German into English.  "It is beyond dispute that bringing a large number of witnesses from abroad to [Texas] would be expensive and time-consuming."  *See BBC Chartering & Logistic GmbH* v. *Siemens Wind Power A/S*, 2008 WL 155048, at *4 (S.D. Tex. Jan. 15, 2008).  Likewise "obtaining and translating these documents would be burdensome, time-consuming, and costly in this forum."  *See DTEX*, 508 F. 3d at 799.  And it is obviously more "easy, expeditious and inexpensive" to conduct a trial in Germany when the majority of witnesses are based there.  *Id.* at 794.

The public interest factors to be taken into account in deciding a *forum non conveniens* motion include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial ... in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*O'Keefe*, 347 F. App'x at 32.  As plaintiff has acknowledged, "[i]f the private factors weigh in favor of dismissal, no further inquiry need be made."  (3/17 MTD Response at 10 (citing *Baris* v. *Sulpicio Lines, Inc.*, 932 F.2d 1540, 1150–51 (5th Cir. 1991)).)  The Court thus "need not reach" the public interest factors at all.  *Baumgart*, 981 F.2d at 837.

But in any case, those factors favor dismissal because "this case can hardly be characterized as a local controversy."  *Syndicate 420 at Lloyd's London* v. *Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986).  As has been explained in detail by multiple courts, the dispute between Prevent Group and VWAG has its roots in Germany, and plaintiff cannot seriously contend there would be "administrative difficulties" litigating in German courts, *O'Keefe*, 347 F. App'x at 32, because Prevent Group companies have been doing that for years.  Moreover, as the court noted in *Prevent I*, the "locus of the alleged culpable conduct" and "focal point of plaintiffs' dispute with

Volkswagen" is in Germany, such that "Germany is the country with the greatest interest in the controversy." 2021 WL 1087661, at \*9–10.

3.   *Plaintiff's Choice of Forum Deserves No Deference.*

The final factor in the *forum non conveniens* analysis is to "give 'the relevant deference' to the plaintiff's choice of forum." *Alpine View*, 205 F.3d at 222.  In this Circuit, even a truly "American plaintiff's choice of its home forum" "cannot be given dispositive weight," *Anderson Tully Lumber Co.* v. *Int'l Forest Prods., S.r.L*, 306 F. App'x 858, 861 (5th Cir. 2009), and no deference is appropriate "when the plaintiff **or real parties in interest** are foreign," *Piper Aircraft*, 454 U.S. at 236 (emphasis added).  That means that when a nominally American plaintiff is in reality suing as the "representative of a foreign company," the plaintiff's choice of forum does not matter for *forum non conveniens* purposes.  *See Tjontveit* v. *Den Norske Bank ASA*, 997 F. Supp. 799, 804 (S.D. Tex. 1998).  Indeed, it would be a "veritable paroxysm of formalism" to treat a plaintiff as "American" when it is so "in only the most artificial sense," because, for instance, its "managers and shareholders" are based in a foreign country."  *U.S.O. Corp.* v. *Mizuho Holding Co.*, 547 F.3d 749, 750–51 (7th Cir. 2008).  Courts will also scrutinize whether a purportedly American "plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons." *Iragorri* v. *United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).  One indication of "forum shopping" is the fact that the plaintiff previously "unsuccessfully litigated" claims abroad.  *Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015).

Here, every indication is that plaintiff is American "in only the most artificial sense," so deferring to plaintiff's choice of forum would be the type of "formalism" condemned by courts. *U.S.O. Corp.*, 547 F.3d at 751.  Prevent USA has already been labeled a "shell company" and "scouting party" engaged in forum shopping by the Sixth Circuit.  *Prevent I Appeal*, 17 F.4th at 657, 661.  Since that decision, plaintiff's forum shopping has grown more egregious.  Instead of

-20-

heeding the Sixth Circuit's instruction to refile its claims in Germany, Prevent Group reincorporated Prevent USA in Texas and brought those same claims again here.  Plaintiff continues to have no actual operations in the United States, and its ███████████████████ ████████████████████ should be seen for what it is.  Plaintiff's ███████████████ █████████████████████████ in Germany (Nelles Decl. Exs. 14, 15, 25), and that is where Prevent Group has been litigating with VWAG for years.  And plaintiff has now admitted in the discovery process that most documents and witnesses are in Germany.  (*See supra* at 10–11, 18.)

To defer to plaintiff's choice of forum on this record would bless a playbook for forum shopping in this country.  If a foreign company can reincorporate its shell subsidiary in Texas to refile a lawsuit that a federal court of appeals has already said belongs in Germany, then the *forum non conveniens* doctrine is effectively toothless.  That could not be what the Fifth Circuit intended when it urged "a single and uniform approach to the analysis and application of the *forum non conveniens* doctrine" and expressed a concern about the "unintended consequences of encouraging forum shopping in this circuit by future foreign antitrust plaintiffs."  (Mandamus Order at 4–5.)

## II.    THIS CASE SHOULD ALSO BE DISMISSED FOR THE OTHER REASONS RAISED IN DEFEDANTS' PRIOR MOTION TO DISMISS.

In their previous motion to dismiss, defendants raised, as independent grounds for dismissal, issue preclusion, the Foreign Trade Antitrust Improvements Act, failure to state a claim, and failure to plead personal jurisdiction.  Those arguments are not affected by plaintiff's immaterial edits in the SAC.  (*See supra* at 9–10.)  Defendants recognize that the Court has already rejected those arguments, and accordingly, while they preserve them for appeal, will not reargue them at length here.  With respect to preclusion in particular, however, defendants note that the same developments that undermine plaintiff's prior arguments on *forum non conveniens* similarly

undermine plaintiff's prior arguments on preclusion, as the legal standards are no longer different and plaintiff's alleged nexus to Texas based on its IAC allegations has been eviscerated.  (*See* R&R at 5–7; *supra* at 7–13.)  For the additional reasons set forth in defendants' February 10, 2023 motion to dismiss (2/10 MTD at 3, 10–14), this action fails because plaintiff is precluded from relitigating the findings as to the *forum non conveniens* factors already made in *Prevent I* and *Prevent II* and should be dismissed on that basis as well.

## CONCLUSION

The Fifth Circuit has now confirmed that this Court can dismiss an antitrust case like this on the basis of *forum non conveniens*.  In doing so, the Fifth Circuit emphasized the need to avoid a non-"uniform approach" that could "encourag[e] forum-shopping in this circuit by future foreign antitrust plaintiffs."  (Mandamus Order at 4–5.)  If any antitrust case implicates those concerns and should be dismissed on the basis of *forum non conveniens*, it is this one.

December 18, 2023                              Respectfully submitted,

                                              /s/ Sharon L. Nelles
                                              Sharon L. Nelles (admitted *pro hac vice*)
Michael Smith                                     New York State Bar No. 2613073
State Bar No. 18650410                        Steven L. Holley (admitted *pro hac vice*)
SCHEEF & STONE, LLP                           Suhana S. Han (admitted *pro hac vice*)
113 East Austin Street                        Leonid Traps (admitted *pro hac vice*)
Marshall, Texas 75670                         Jessica H. Goldman (admitted *pro hac vice*)
Tel: (903) 938-8900                           SULLIVAN & CROMWELL LLP
michael.smith@solidcounsel.com                125 Broad Street
                                              New York, New York 10004
                                              Tel: (212) 558-4000
                                              nelless@sullcrom.com
                                              holleys@sullcrom.com
                                              hans@sullcrom.com
                                              trapsl@sullcrom.com
                                              goldmanj@sullcrom.com


                              *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

Respectfully submitted,

*/s/ Sharon L. Nelles*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

In compliance with L.R. CV-5(a)(7)(B), I hereby certify that the above document may be filed under seal. This is because the Court has entered a Protective Order which provides protections from disclosure for materials designated as confidential.

Respectfully submitted,

*/s/ Sharon L. Nelles*